**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

PEOPLE'S UNITED EQUIPMENT
FINANCE CORP., a Texas corporation,
formerly known as Financial Federal
Credit Inc.,

       Plaintiff,

vs.                       Case No. 11-80291-CIV-MARRA/JOHNSON

WELLS FARGO EQUIPMENT
FINANCE, INC., a Minnesota
Corporation; EXACT CRANE &
EQUIPMENT, LLC, an Ohio limited
liability company; and CLEVELAND
CRANE & SHOVEL SALES, INC., an
Ohio corporation,

       Defendants.
_____/

**DEFENDANT WELLS FARGO EQUIPMENT FINANCE, INC.'S,
MOTION TO DISMISS COUNTS IV, V, VI, VII, X AND XI OR
ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
COUNTS IV, V, VI, VII, X AND XI OF PLAINTIFF'S AMENDED COMPLAINT**

       Defendant, Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), by and through its

undersigned counsel pursuant to Rule 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure

and Rule 7.1 of the Local Rules of the United States District Court for the Southern District of

Florida, hereby moves the Court for an Order dismissing Counts IV, V, VI, VII, X, and XI of

Plaintiff's, People's United Equipment Finance Corp. ("People's"), Amended Complaint [Dkt.

32, Am. Compl.] or alternatively, a Judgment on the Pleadings with respect to Counts IV, V, VI,

VII, X, and XI of People's Amended Complaint and states:

## MEMORANDUM OF LAW

### I.      PROCEDURAL HISTORY

On March 16, 2011, People's filed a nine-count complaint against three defendants, Wells Fargo, Exact Crane & Equipment, LLC ("Exact Crane"), and Cleveland Crane & Shovel Sales, Inc. ("Cleveland Crane").  [Dkt. 1].  Of those nine counts, the following five counts were against Wells Fargo: Count I for declaratory judgment, Count IV for conversion, Count V for tortious interference with a contractual relationship, Count VI for conspiracy to violate Fla. Stat. § 818.01, and Count VII for fraudulent transfer pursuant to Fla. Stat. § 726.101 *et seq*.  *Id*. Wells Fargo filed its Answer and Affirmative Defenses to People's Complaint on April 11, 2001. [Dkt. 8].  The Complaint and Answer framed an issue of whether People's or Wells Fargo had superior security interests under Article 9 of the Uniform Commercial Code ("UCC"), as adopted by Florida Fla. Stat. §679.1011 *et seq*.  Four heavy-duty, large construction cranes constituted the collateral.  (the "Cranes").

On November 3, 2011, People's filed a Motion for Leave to File an Amended Complaint. [Dkt. 26].  The Court granted People's motion [Dkt. 31], and on November 21, 2011 People's filed its Amended Complaint.  [Dkt. 32].  The Amended Complaint added two counts against Wells Fargo: Count X for conspiracy to commit conversion, and Count XI for civil theft pursuant to Fla. Stat. § 812.014.  *Id*.  Additionally, People's alleged Wells Fargo knew or should have known that People's had a superior security interest in the Cranes.  *Id*. at ¶¶ 22, 24.  Based on the additional allegations, People's amended its "wherefore" clauses in Count IV for conversion, Count V for tortious interference with a contractual relationship, and Count VI for conspiracy to violate Fla. Stat. § 818.01, to add requests for punitive damages against Wells Fargo.  *Id*.

Prior to the Amended Complaint, this case was basically a priority dispute, in which both

Wells Fargo and People's claimed superior security interests in the Cranes. With the filing of the Amended Complaint, the conduct alleged and the relief sought are of an entirely different complexion. As such, at this time it is appropriate to address significant legal issues in this matter.

Because Wells Fargo previously answered Count IV for conversion, Count V for tortious interference, Count VI for conspiracy to violate Florida Statute § 818.01 and Count VII for fraudulent transfer pursuant to Florida Statute § 726.101 *et seq.*, in the original Complaint, it is somewhat unclear under the Federal Rules of Civil Procedure whether Wells Fargo is entitled to file a motion to dismiss those Counts as amended. In all events, however, Wells Fargo is entitled at a minimum to file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Counts IV and V, once the pleadings are closed. Accordingly, as to Counts IV, V, VI, VII, X, and XI, Wells Fargo moves to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b); alternatively, as to all of these Counts, Wells Fargo moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). To close the pleadings, Wells Fargo intends to file its Answer to the Amended Complaint soon after the filing of this Motion. The filing of an answer to the Amended Complaint does not affect the motion to dismiss, as long as the answer is filed after or simultaneously with the motion to dismiss. *United States Fidelity and Guaranty Company v. Bank of Bentonville,* 29 F. Supp. 2d 553, 555 (W.D. Ark. 1998); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 at 93 (3d ed. 2004).

## II.       <u>INTRODUCTION</u>

Evident from the Amended Complaint is the fact this case involves a dispute between two secured creditors over priority of security interests in the Cranes and proceeds from sale of the

Cranes.  *See* Am. Compl. ¶¶ 15, 32, 44, 45, 62, 131 and 134.  The essence of this matter is whether the Cranes constituted "inventory" as defined by the UCC.  Am. Compl. ¶¶ 15, 42.  If the Cranes constituted "equipment" under the UCC as opposed to "inventory" then Wells Fargo would have priority.  There are different priority rules under the UCC for obtaining a purchase money security interest between "equipment" and "inventory."  *See* Fla. Stat. § 679.324.

Pursuant to *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), Wells Fargo elects its right to attach as Composite Exhibit "1" true and correct copies of Wells Fargo's security agreement schedules and UCC-1's regarding the Cranes. *Brooks,* 116 F.3d at 1369 (holding that defendant may attach to its motion to dismiss documents referred to in plaintiff's complaint that are central to plaintiff's claim without the motion being converted to a motion for summary judgment).  Wells Fargo's loan transactions are referenced in ¶¶ 14, 15, 18, 21, 24, 32, 44-46 of the Amended Complaint.

### III.   STATEMENT OF THE CASE

People's makes a number of allegations in the Amended Complaint which are disputed by Wells Fargo.  However, for purposes of this Motion, supplemented by only the documents attached in Composite Exhibit "1", this Motion relies exclusively on the allegations of the Amended Complaint.  These allegations are assumed to be true, but only for the purpose of this Motion.

According to the Amended Complaint, in 2007 and 2008, Wells Fargo provided financing to Atlantic Leasing, Inc., and Zeiger Crane Rental, Inc. ("Atlantic/Zeiger") for the purchase of the Cranes.  Am. Compl. at ¶ 14.  To secure this financing, Wells Fargo obtained a security interest in the Cranes.  *Id.* at ¶ 15; Composite Exhibit "1."  Wells Fargo's UCC financing statements specifically identified the Cranes as its collateral.  *See* Composite Exhibit

"1."

People's began to provide loans to Atlantic/Zeiger in 2000.  Am. Compl. ¶ 11.  Since 2000, People's provided Atlantic/Zeiger with numerous loans through the year 2008.  *Id.* at ¶¶ 9, 10; Exhibit "A" to Am. Compl.  To secure its loans, People's asserts it obtained a security interest in all of Atlantic/Zieger's assets and after-acquired assets.  *Id.* at ¶ 10.  People's security interest is evidenced by UCC financing statements filed with the Florida Secretary of State on December 4, 2000 and July 20, 2004.  *Id.* at ¶ 11.  Neither People's security agreements nor People's UCC financing statements specifically identify the Cranes.  *See generally* Exhibit "A" to Am. Compl.  Instead, People's UCC financing statements reference "all assets now owned or hereafter acquired, including without limitation all property described below or on any schedule hereto, together with all attachments, accessions and accessories thereto, and all proceeds thereof."  Exhibit "A" to Am. Compl., Dkt. 32-1, pgs. 16, 25, 28, 29-39, and 41.  People's security agreements attached to the Amended Complaint state that Atlantic/Zeiger pledges as security:

> all property listed on any Schedule to this Agreement (the "Property") and in all goods, *inventory*, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit account, fixtures and other property, wherever located, now or hereafter belonging to [Atlantic/Zeiger] or in which [Atlantic/Zeiger] has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing.

(emphasis added).  Exhibit "A" to Am. Compl., Dkt. 32-1, pg 4, ¶ 1.

People's alleges that its security interest is superior to all other security interests in the Cranes except for any properly perfected inventory purchase money security interests.  Am. Compl. at ¶ 12.  People's alleges that, even though Wells Fargo claims it had a security interest in the Cranes superior to the security interest of People's, *Id.* at ¶ 45, Wells Fargo was a junior

secured creditor.  *Id.* at ¶¶ 12, 15, 32, 44, 46, 62.

In or around August 2010, Wells Fargo issued a default notice to Atlantic/Zeiger.  *Id.* at ¶ 16.  On or about December 27, 2010, Wells Fargo sent Atlantic/Zeiger a notice of acceleration demanding all outstanding monies due on the loans.  *Id.* at ¶ 18.  In early 2011, under continuous default of the loan obligations to Wells Fargo, the Cranes were sold to Exact Crane and Cleveland Crane.  *Id.* at ¶¶ 25, 29.  Proceeds in the amount of $3.75 million (the "Proceeds"), were wired to Wells Fargo.  *Id.* at ¶ 29.  In exchange for receipt of the Proceeds, Wells Fargo released Atlantic/Zeiger and its principals Steven and Nancy Zeiger from their guaranty obligations to Wells Fargo.  *Id.*  After the sale of the Cranes, People's made written demand on Wells Fargo for the Proceeds.  *Id.* at ¶ 33.

## IV.    WELLS FARGO HAD RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE, WHETHER AS A SUPERIOR OR INFERIOR SECURED CREDITOR.

Although a question in this case is whether Wells Fargo had a superior security interest in the Cranes and the Proceeds, Wells Fargo's priority does not affect the outcome of Counts IV, V, VI, VII, X, and XI.  In all events, this Court must dismiss those counts of the Amended Complaint or, alternatively, enter judgment in favor of Wells Fargo.  Wells Fargo as a secured creditor as alleged by the Amended Complaint was authorized by the UCC to take the Cranes and/or the Proceeds.  Thus, People's has not alleged, and cannot allege, that a) Wells Fargo converted People's property or cash proceeds; b) conspired to convert People's property or cash proceeds; c) exercised wrongful dominion and control over People's property or cash proceeds in violation of § 772.11 of the Florida Statutes; d) tortiously interfered with the contractual relationship between People's and Atlantic/Zeiger; and e) conspired to violate Florida Statute § 818.01; or fraudulently transferred the Cranes in violation of Florida Statute § 726.101 *et seq.*

1.      **Wells Fargo was entitled to possess and sell the Cranes under the UCC.**

Under the UCC, after Atlantic/Zeiger defaulted on the underlying loan obligations to Wells Fargo, Wells Fargo was permitted to take possession of and to sell the Cranes in which it had a security interest.  Fla. Stat. § 679.609; *Continental Bank of Buffalo Grove v. Krebs,* 540 N.E. 2d 1023 (Ill. 2nd DCA 1989)(holding that the language of 9-503[1] is not limited to a senior secured party).  Florida Statute §679.609 states that "(1) [a]fter default, a secured party (a) may take possession of the collateral; and (b) without removal, may render equipment unusable on a debtor's premises under s. 679.610."  The UCC specifically provides that any secured party, regardless of position of priority, can dispose of collateral after default; therefore, even if Wells Fargo had a junior security interest in the Cranes, the UCC allowed Wells Fargo to dispose of the Cranes.  Fla. Stat. § 679.610, *Continental,* 540 N.E. 2d at 1026.  Florida Statute §679.610(1) states that "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing."  Fla. Stat. § 679.610.  Official Comment 5 of the Uniform Commercial Code § 9-610, Fla. Stat. § 679.610 as adopted by Florida, states that "[t]he exercise of [the right to dispose of collateral] by a secured party whose security interest is subordinate to that of another secured party does not of itself constitute a conversion or otherwise give rise to liability in favor of the holder of the senior security interest."  Thus, Wells Fargo, as an acknowledged secured creditor in People's Amended Complaint, cannot be liable for conversion.

2.      **Under the UCC, Wells Fargo was entitled to the Proceeds from the sale of the Cranes.**

Even if People's had a superior security interest, Wells Fargo was entitled to take the Proceeds from the sale.  Fla. Stat. § 679.615.  Florida Statute 679.615 states that:

---

[1] The Uniform Commercial Code was revised in 2000.  The revised Uniform Commercial Code renumbered Section

"[a] secured party *shall* apply or pay over for application the cash proceeds under s. 679.610 in the following order:
(a) The reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, and, to the extent provided for by agreement and not prohibited by law, reasonable attorneys' fees and legal expenses incurred by the secured party;
(b) The satisfaction of obligations secured by the security interest or agricultural lien under which the disposition is made;
(c) The satisfaction of obligations secured by any subordinate security interest in or other subordinate lien on the collateral if:

> (1) The secured party receives from the holder of the subordinate security interest or other lien an authenticated demand from proceeds before distribution of the proceeds is completed; ….

(emphasis added).  Fla. Stat. § 679.615.

Thus, Wells Fargo was required to apply the Proceeds in the following manner: (1) for the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing of the collateral; (2) to Wells Fargo because Wells Fargo's security interest was the security interest under which the disposition was made; and (3) to the satisfaction of any *subordinate* security interests.  (emphasis added).  *Id.; Continental,* 540 N.E. 2d at 1026.

People's continually alleges that Wells Fargo's actions would result in damages to People's.  Am. Compl. ¶¶ 38, 65, 75, 124.  However, under Florida Statute § 679.617, if People's had a senior security interest in the Cranes as it alleges, its security interest in the Cranes was not extinguished.  *Continental,* 540 N.E. 2d at 1026.  Thus, People's rights were protected because its security interest was still effective against the Cranes.

### V.   PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION BECAUSE WELLS FARGO WAS AUTHORIZED TO TAKE POSSESSION OF THE CRANES AND THE PROCEEDS FROM THE SALE OF THE CRANES UNDER THE UNIFORM COMMERCIAL CODE.

People's has not satisfied, and cannot satisfy, the elements of conversion.  In Florida, in order to claim conversion, People's must allege that Wells Fargo wrongfully asserted dominion

---

9-503 as 9-609.

over the property.  *Seropian v. Wachovia Bank, N.A.*, 2010 WL 2949658 *3 (S.D. Fla.).  As discussed above, Wells Fargo was entitled to possess and dispose of the Cranes and Wells Fargo was entitled to the Proceeds from the sale of the Cranes.

Cases with similar facts as the present matter hold there is no conversion by a junior secured party for possessing and disposing of collateral and keeping the proceeds of the sale of the collateral.  *First National Bank of Steeleville v. Erb Equipment Company, Inc.,* 921 S.W. 2d 57, 63-64 (E.D. Mo. 1996).  In *Erb,* the plaintiff First National Bank of Steeleville ("National") brought suit against Erb Equipment Company, Inc. ("Erb") to recover proceeds from the sale of machinery Erb had repossessed from AmEarth Corporation ("AmEarth").  *Id.* at 59-60.  National sued Erb for conversion.  *Id.* at 61, 63.  AmEarth was a debtor to both National and Erb.  *Id.* at 59-60.  The court determined that National had a superior security interest in the machinery.  *Id.* at 63.  However, the court held Erb was not liable for conversion because under the UCC, Erb, as a secured party, was authorized to take possession of the collateral and dispose of it.  *Id.* at 63-64.  The court, citing *Krebs*, *supra,* held that Erb was entitled to keep the proceeds from the sale of the machinery.  *Id.* at 63.  The court reasoned National did not attempt to seize the collateral prior to the sale and never requested Erb turn over the collateral to National.  *Id.* at 63-64.

In addition, senior secured parties do not automatically have ownership or exclusive rights in collateral upon default.  *City Bank v. Compass Bank,* 717 F. Supp 2d 599, 613 (W.D. Texas 2010); *See also, Ginsberg and MLG Properties, Inc. v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 499 (Fla. 3d DCA 1994)(holding that a lender did not have an automatic possessory interest in rents upon default of borrower because the security agreement only gave the lender the automatic right to pursue its remedies under the security agreement, and that the lender was required to take affirmative actions to obtain possessory interest of the rents).  In *City Bank,*

Sambrano Corporation ("Sambrano") obtained a line of credit from City Bank ("City") in September of 2005. *City Bank*, 717 F. Supp 2d at 602. In 2007, Sambrano obtained another line of credit from Compass Bank ("Compass") to replace the smaller line of credit from City. *Id.* Both City and Compass took a security interest in Sambrano's accounts receivables at the time the respective lines of credit were opened. *Id.* Sambrano did not use the proceeds of the Compass line of credit to pay off the City line of credit. *Id.* at 603. In January of 2008, both City and Compass became aware that Sambrano did not pay off the City line of credit with the proceeds of the Compass line of credit in violation of each respective line of credit. *Id.* at 603-04. City sued Compass alleging conversion of accounts receivable in the amount of $1,000,000. *Id.* at 605-06. During the suit, Sambrano was placed into bankruptcy by an involuntary bankruptcy petition. *Id.* at 605. The automatic stay was lifted so City and Compass could pursue their claims. *Id.* Specifically, City contended Compass received a deposit check from the City of El Paso payable to Sambrano; placed the funds into Sambrano's operating account; and thereafter, debited Sambrano's operating account in the amount of $1,000,000 to pay down the Compass line of credit. *Id.* at 605. City demanded that Compass turn over the $1,000,000 as proceeds of an accounts receivable in which City had a superior security interest. Compass did not return the $1,000,000 and City sued Compass for conversion. *Id.*

City contended that Compass was liable for conversion because Compass did not have the authority to debit Sambrano's operating account to pay down its line of credit because Sambrano was in default as to its obligations to City. *City Bank*, 717 F. Supp 2d at 611. However, under the UCC, the mere fact Sambrano was in default of its obligations to City did not automatically give City a right to possession of the collateral. *Id.* at 613. Instead, the court reasoned City did not assert its rights to possession of the collateral until a time period after

Compass had already debited the $1,000,000.  *Id.* at 613.  Thus, the court held City had no action

for conversion, because City did not have possession of the collateral at the time the money was

applied to Compass's line of credit.  *Id.*

Under the plain language of the UCC and the case law interpreting the UCC, even if

Wells Fargo's security interest in the Cranes was inferior to that of People's, Wells Fargo's

actions were authorized.  The Cranes were sold after Atlantic/Zeiger had defaulted on its

obligations to Wells Fargo.  After the disposition, Wells Fargo obtained the proceeds of the sale

of the Cranes in accordance with Florida Statute § 679.615.  Wells Fargo's actions as alleged by

the Amended Complaint were authorized by the UCC.

Wells Fargo acknowledges there have been some cases in which a junior secured creditor

was held liable for conversion.  The types of cases, however, are factually distinguishable from

the present case.  For example, a senior secured creditor prevailed on a conversion action against

a junior secured creditor where the secured creditor repossessed the collateral, the junior secured

creditor then took possession of the collateral from the senior secured creditor, and the senior

secured creditor demanded junior secured creditor return the collateral prior to the sale.  *In Re*

*Machinery, Inc.* 337 B.R. 368, 375 (E.D. Mo. 2005).  As an additional example, a senior secured

creditor had a conversion action against a junior secured creditor where the senior secured

creditor terminated the rights of the junior secured creditor to receive lock box receivables and

the junior secured creditor nevertheless continued to do so.  *In re Halmar Distributors, Inc.,* 968

F.2d 121, 129-30 (1st Cir. 1992).

In the case at bar, the Amended Complaint makes no allegations that People's had

already repossessed the Cranes prior to the sale or that Wells Fargo took the Proceeds from the

possession of People's.  The Amended Complaint affirmatively shows that Wells Fargo as a

secured creditor was entitled to take possession, whether or not its security interest was superior or inferior.  This Court must dismiss Count IV for conversion or, alternatively, award judgment to Wells Fargo under Count IV.

## VI.   PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP.

In Florida, in order for People's to state a claim of tortious interference with a contractual relationship, People's must allege: (1) the existence of a contract; (2) Wells Fargo's knowledge of the contract; (3) Wells Fargo's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach. *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998); *Banks Hardwoods Florida, LLC v. Maderas Iglesias, S.A.*, 2009 WL 3446736 (S.D. Fla.).

To assert its tortious interference claim, People's alleges it had security agreements with Atlantic/Zeiger in which Atlantic/Zeiger agreed to the following three provisions: (1) People's would have a superior security interest in the Atlantic/Zeiger assets; (2) Atlantic/Zeiger would not permit their assets to become subject to any superior lien; and (3) Atlantic/Zeiger would not sell or otherwise dispose of their assets without People's consent.  Am. Compl. ¶ 70.

To support its allegations, People's never alleges that in fact its security interests are inferior.  Thus, on its face, the Amended Complaint is deficient as to the first two provisions of the security agreements.  Simply put, because People's consistently alleges superior security interests, the Amended Complaint alleges no interference with those two provisions.

To be fair, however, presumably Count V is alleged under an assumption Wells Fargo's security interest is superior.  This means, in essence, that People's alleges Atlantic/Zeiger was prohibited from seeking first priority secured financing from any lender other than People's. This allegation collapses upon analysis for a number of reasons.

First, in this scenario, without the purchase money financing from Wells Fargo, Atlantic/Zeiger would not have had any interest in the Cranes in the first place because the Cranes would not have existed.  Accordingly, Wells Fargo could not have interfered because there would have been no subject for interference.  Stated differently, the financing of Wells Fargo was a benefit, not an interference.

Second, following the above, with Wells Fargo as the first priority secured lender on the four Cranes, resulting from purchase of the Cranes on account of financing from Wells Fargo, People's could have suffered no damages.  Without the purchase-money financing provided by Wells Fargo, there would be no Cranes for People's as a junior or as a superior secured creditor.

Now, as to the third provision, that Atlantic/Zeiger would not sell any collateral without People's consent, again there can be no claim for tortious interference.  Presumably, the allegation of People's is that Wells Fargo interfered (e.g., presumably forcing Atlantic/Zeiger to sell the Cranes) by causing Atlantic/Zeiger to violate the third provision.  However, as the Amended Complaint alleges, Atlantic/Zeiger was in default to Wells Fargo; meaning under its security agreements Wells Fargo as a secured creditor was entitled to possession and/or sale of the Cranes, regardless of whether Wells Fargo was a senior or junior secured creditor.  Thus, any action to cause a sale was not wrongful.

In any event, the Amended Complaint affirmatively shows that Wells Fargo's actions were justified because the UCC authorized Wells Fargo's actions.  Under Florida law, actions taken to protect one's financial interest are privileged, so long as those actions are done by proper means.  *Johnson Enterprises of Jacksonville, Inc.,* 162 F.3d 1290 at 1321-22; *Menendez v. Beech Acceptance Corporation,* 521 So. 2d 178, 180 (Fla. 3d DCA 1988); *Ethyl Corporation v. Balter,* 386 So. 2d 1220, 1224-25 (Fla. 3d DCA 1980).  A party that takes proper action to

protect its own financial interest, even if done with malice or animosity towards the allegedly tortiously interfered party, is still protected by the privilege. *Id.* People's amended Complaint alleges that Wells Fargo needed to extract assets from Atlantic/Zeiger because it stood a chance to lose millions of dollars and that Wells Fargo was concerned about its ability to collect on its loans. Am. Compl. ¶¶ 21, 25. Thus, by People's own admission, Wells Fargo acted to protect its own financial interest and this Count must be dismissed.

## VII.   PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR CONSPIRACY TO VIOLATE SECTION 818.01 OF THE FLORIDA STATUTES.

In the Amended Complaint, People's alleges that Wells Fargo conspired with  Exact Crane and Cleveland Crane to dispose of the Cranes without People's written consent in violation of Florida Statute § 818.01. Am. Compl. ¶¶ 84. Florida Statute § 818.01 states that:

> Whoever shall pledge, mortgage, sell, or otherwise dispose of any personal property to him or her belonging, or which shall be in his or her possession, and which shall be subject to any written lien, or which shall be subject to any statutory lien, whether written or not, or which shall be the subject of any written conditional sale contract under which the title is retained by the vendor, without the written consent of the person holding such lien, or retaining such title; and whoever shall remove or cause to be removed beyond the limits of the county where such lien was created or such conditional sale contract was entered into, any such property, without the consent of aforesaid, or shall hide, conceal or transfer, such property *with intent to defeat, hinder or delay the enforcement of such lien,* or the recovery of such property by the vendor, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

(emphasis added). Fla. Stat. § 818.01.

Under this statute, intent to defeat, hinder or delay the enforcement of the lien is required for there to be a violation of Florida Statute § 818.01. *Rosenberg v. Ryder Leasing, Inc.*, 168 So. 2d 678, 680 (Fla. 3d DCA 1964). As discussed above, Wells Fargo was acting within its rights under the UCC to repossess and dispose of the Cranes, retain the Proceeds from the sale of the Cranes under the UCC, and to protect its own economic interest. Thus, under the circumstances,

it is impossible for Wells Fargo to have committed a crime.  Additionally, if People's had a superior security interest in the Cranes as alleged in the Amended Complaint, its lien in the Cranes would not be extinguished, but would continue even after the sale.

**VIII.   PEOPLE'S LACKS STANDING TO ASSERT A CLAIM FOR FRAUDULENT TRANSFER PURSUANT TO FLORIDA STATUTES § 726.101 *ET SEQ*. OR ALTERNATIVELY, PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR FRAUDULENT TRANSFER PURSUANT TO FLORIDA STATUTES § 726.101 *ET SEQ*.**

Pursuant to case law of the Southern District of Florida, fraudulent conveyance claims are property of the bankruptcy estate.  *In re Zwirn*, 362 B.R. 536, 539-40 (Bankr. S.D. Fla. 2007); *In re Fritz*, 88 B.R. 434 (Bankr. S.D. Fla. 1988); *In re Primack*, 81 B.R. 711 (Bankr. S.D. Fla. 1987).  Furthermore, fraudulent conveyance claims can only be asserted by the trustee of the bankruptcy or the debtor-in-possession not a creditor of the debtor.  *Id.*  The *Zwirn* court emphasized that creditors bringing actions for the recovery of property of the estate "under state fraudulent transfer laws would interfere with the [bankruptcy] estate and with the equitable distribution scheme dependant upon it…." *Zwirn,* 362 B.R. at 541.  In the Amended Complaint, People's alleges that Atlantic/Zeiger filed a petition under Chapter 11 of the U.S. Bankruptcy Code on February 18, 2011.  Am. Compl. ¶¶ 34-35.  Thus, the trustee or debtor-in-possession of the Atlantic/Zeiger bankruptcies is the only party who can bring an action for fraudulent conveyance action to recover property of the bankruptcy estate.  People's as a creditor of Atlantic/Zeiger, lacks standing to assert a fraudulent transfer action and this Count must be dismissed.

Alternatively, Florida Statutes § 726.101 *et seq*. requires that a transfer, as defined by Florida Statute § 726.102(12), occur in order for there to be a violation.  *See* Fla. Stat. § 726.105 and § 726.106.  Transfer is defined as "every mode, direct or indirect, absolute or conditional,

voluntary or involuntary, of disposing of or parting with an *asset* or an interest in an *asset*, and includes the payment of money, release, lease, and creation of a lien or other encumbrance." (emphasis added) Fla. Stat. § 726.102(12).  An asset is defined as "property of a debtor, but the term *does not include:* (a) Property to the extent it is covered by a valid lien; …." (emphasis added) Fla. Stat. § 726.102(2).

In the present action, as the Amended Complaint alleges, the Cranes were fully encumbered by Wells Fargo's lien.  Am. Compl. ¶¶ 26, 29; *See also* Wells Fargo's security agreements attached as Composite Exhibit "1."  People's alleges that Wells Fargo would accept $3.75 million and forgive over $1.2 million and that Wells Fargo would release an entire $5.2 million debt owed by Atlantic/Zeiger for $3.75 million.  *Id.*  As stated, it is alleged that Wells Fargo had a valid lien on the Cranes.  *Id.* at ¶¶ 14, 15, 32, 44, 45, 46.  The only dispute is whether Wells Fargo or People's had a superior security interest in the Cranes.  *Id.* at ¶¶ 14, 15, 44, 45, 46.  Because the Cranes were covered by a valid lien, they are not considered assets and cannot be the subject of a fraudulent transfer action, pursuant to Florida Statutes 726.101 *et seq.*

Lastly, if it is determined that there has been a "transfer," People's is unable to prevail on its fraudulent transfer action because the Florida Uniform Fraudulent Transfer Act provides a defense if the "transfer" resulted from "(b) [e]nforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code."  Fla. Stat. § 726.109(5)(b).  Wells Fargo's actions were authorized by the UCC and Wells Fargo action of repossessing and disposing of the Cranes, and retaining the Proceeds from the sale of the Cranes was in compliance with the UCC, whether Wells Fargo's security interest in the Cranes was senior or junior to People's.

**IX.     PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO COMMIT CONVERSION BECAUSE CIVIL CONSPIRACY REQUIRES AN UNDERLYING TORT OR WRONGDOING.**

Count X of the Amended Complaint alleges Wells Fargo conspired with Exact Crane and Cleveland Crane to convert the Cranes and the Proceeds from the sale of the Cranes.  However, under Florida law, civil conspiracy cannot stand alone as a cause of action. It requires an actionable, underlying tort or wrongdoing.  *Palmer v. Gotta Have it Golf Collectibles, Inc.*, 106 F.Supp.2d 1289, 1302-03 (S.D. Fla. 2000).  As discussed above, this Court must dismiss Count IV for conversion against Wells Fargo because the UCC authorized Wells Fargo's actions of repossessing and disposing of the Cranes and keeping the Proceeds from the sale of the Cranes.  Because the underlying tort of conversion must be dismissed, People's count for conspiracy to commit conversion must also be dismissed.

**X.     PEOPLE'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CIVIL THEFT BECAUSE WELLS FARGO WAS AUTHORIZED TO TAKE POSSESSION OF THE CRANES AND THE PROCEEDS FROM THE SALE OF THE CRANES UNDER THE UNIFORM COMMERCIAL CODE.**

To state a claim for civil theft under Florida law, People's must allege an injury resulting from a violation by Wells Fargo of the criminal theft statute, Fla. Stat. §812.014.  *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir.2009); *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1326-27 (11th Cir.2006); *Pearson v. Wachovia Bank, N.A.*, 2011 WL 9505 *6 (S.D. Fla.); *Seropian,* 2010 WL at *3 (S.D. Fla.).  Florida Statute § 812.014 states that: (1) [a] person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the *property of another* with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property; [or] (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.  Fla. Stat. § 812.014.  ("emphasis added").  The phrase "property of another" is defined as "property in

which a person has an interest upon which *another person is not privileged to infringe without consent*, whether or not the other person also has an interest in the property." (emphasis added), Fla. Stat. § 812.012(5). The substantive difference between conversion and theft under Florida Statute § 812.014 is that theft requires a criminal intent to steal. *In re General Plastics Corp.,* 184 B.R. 996, 1008 (S.D. Fla. 1995); *City of Cars, Inc. v. Simms*, 526 So.2d 119, 120 (Fla. 5th DCA 1988); *Gasparini v. Pordomingo,* 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008).

In the instant action, as discussed above, Wells Fargo as a secured creditor was privileged to take possession and dispose of the Cranes by the UCC. Additionally, the UCC authorized Wells Fargo to take the Proceeds from the sale of the Cranes. Under the UCC, Wells Fargo did not need Atlantic/Zeiger's or People's consent to repossess or dispose of the Cranes, nor did Wells Fargo need People's consent to take the Proceeds from sale of the Cranes.

Additionally, People's did not have a possessory interest in the Cranes at the time of the sale and thus Wells Fargo cannot be liable for civil theft. *See, Ginsberg,* 645 So. 2d at 497-501 (Fla. 3d DCA 1994). The UCC does not grant a secured party possession in collateral automatically upon default. *City Bank* 717 F. Supp 2d at 613. The UCC provides a secured party with remedies upon default. *See City Bank* 717 F. Supp 2d at 613; Fla. Stat § 679.601 and Fla. Stat. § 679.609. The UCC grants a secured party the right to move to take possession of the collateral. Fla. Stat. § 679.609. Specifically, Florida Statute § 679.609 states that:

> (1) After default, a secured party: (a) May take possession of the collateral; and (b) Without removal, may render equipment unusable on a debtor's premises under s. 679.610.
> (2) A secured party may proceed under subsection (1): (a) Pursuant to judicial process; or (b) Without judicial process, if it proceeds without breach of the peace.
> (3) If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

Fla. Stat. § 679.609.

People's security agreement with Atlantic/Zeiger does not grant People's an automatic possessory interest in the Cranes or the proceeds from the sale of the Cranes upon default. Exhibit "A" to Am. Compl., Dkt. 32-1, pgs. 4-5. People's security agreements state that upon default People's may do one or more of the following:

> (a) Secured Party [People's] *may* accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party *may* require debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party *may* require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party *may* repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process [Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing], and Secured Party may enter the premises where any or all of the Collateral are located [and] disconnect, render unusable, and remove any and all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such [pre]mises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party *may* sell the Collateral by public or private sale, hold, retain the [col]lateral in full or partial satisfaction of the indebtedness due to the Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any [cl]aims or rights of Debtor, and/or (f) Secured Party *may* sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein.

(emphasis added). Exhibit "A" to the Am. Compl., Dkt. 32-1, pg. 4 of 47, ¶ 8.

Agreements that provide a right to take possession, accelerate the debt, operate the property, collect and possess rents and generally every right, cause of action and remedy available under applicable law do not grant an automatic possessory interest, but an automatic right to pursue remedies. *Ginsberg,* 645 So. 2d at 499 (Fla. 3d DCA 1994). In *Ginsberg*, Lennar Florida Holdings, Inc. ("Lennar") purchased mortgages on property owned by Ginsberg and his company MLG Properties, Inc. ("MLG") from the Federal Government Resolution Trust

Company.  *Id.* at 492.  After default, Lennar brought suit against Ginsberg and MLG for among other things the conversion and civil theft of rents on the apartment buildings the mortgages covered.  *Id.*  Ginsberg repeatedly failed to answer the complaint, as amended, and the trial court granted Lennar a default judgment.  *Id.* at 492-93.  Ginsberg moved to vacate the default judgment on the ground that Lennar's amended complaint failed to state a cause of action.  *Id.* at 493.  The trial court denied the motion to vacate the default judgment and Ginsberg and MLG appealed.  *Id.*  The Third District overturned the trial court because it ruled that Lennar's amended Complaint failed to state a cause of action.  *Id.* at 494, 502.  The court held that neither the statute authorizing Lennar's right to rents nor the loan documents between Lennar, and Ginsberg and MLG provided Lennar with an automatic possessory interest in the rents.  *Id.*  Instead the court held that the statute authorizing Lennar's right to rents and the loan documents provided Lennar with the automatic right to pursue its remedies.  *Id.*  The court stated that the loan documents "required some affirmative act by Lennar prior to [the rents] becoming vested." *Id.* at 499.

For all of the above reasons, People's claims for conversion and civil theft must be dismissed.

## XI.    <u>CONCLUSION</u>

For the foregoing reasons, Wells Fargo respectfully requests this Court dismiss Counts IV, V, VI, VII, X, and XI People's Amended Complaint or alternatively, enter a judgment in Wells Fargo's favor as to Counts IV, V, VI, VII, X, and XI of People's Amended Complaint.

Dated: December ___, 2011

Respectfully Submitted,

/s/ Charles F. Ketchey, Jr.

CHARLES F. KETCHEY, JR          FBN 0181735
cketchey@trenam.com
STEPHANIE CRANE LIEB            FBN 0031806
slieb@trenam.com
JUSTIN J. HORAN                 FBN 0060871
jhoran@trenam.com
TRENAM KEMKER
Bank of America Plaza, Suite 2700
101 E. Kennedy Boulevard
Tampa, FL  33602-5150
Ph: (813) 223-7474 | Fax: (813) 229-6553
Attorneys for Defendant, Wells Fargo Equipment
Finance, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing WELLS FARGO EQUIPMENT FINANCE, INC.'S MOTION TO DISMISS COUNTS IV, V, VI, VII, X AND XI OR ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS IV, V, VI, VII, X AND XI OF PEOPLE'S UNITED EQUIPMENT FINANCE CORP.'S AMENDED COMPLAINT was served by the Court's CM/ECF Noticing System on December 9th, 2011 on all counsel or parties of record on the Service List Below.

/s/ Charles F. Ketchey, Jr.

## SERVICE LIST

**Scott B. Cosgrove, Esquire**
scosgrove@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
The Four Seasons Tower, Suite 1420
1441 Brickell Avenue
Miami, Florida 33131

**James J. Stricker, Esquire**
jstricker@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
1633 Broadway, 21st Floor
New York, NY 10019

**Paul L. Orshan, Esquire**
paul@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134

**Jose-Carlos A. Villanueva, Esquire**
jcv@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134