IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

PEOPLE'S UNITED EQUIPMENT
FINANCE CORP., a Texas corporation,
formerly known as Financial Federal
Credit Inc.,

    Plaintiff,

vs.                               Case No. 11-80291-CIV-MARRA/JOHNSON

WELLS FARGO EQUIPMENT
FINANCE, INC., a Minnesota
Corporation; EXACT CRANE &
EQUIPMENT, LLC, an Ohio limited
liability company; and CLEVELAND
CRANE & SHOVEL SALES, INC., an
Ohio corporation,

    Defendants.
_____/

## DEFENDANT WELLS FARGO EQUIPMENT FINANCE, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF PEOPLE'S UNITED EQUIPMENT FINANCE CORP.'S AMENDED COMPLAINT

Defendant, WELLS FARGO EQUIPMENT FINANCE, INC. ("Wells Fargo"), through undersigned counsel, files its Answer and Affirmative Defenses to the Plaintiff, People's United Equipment Finance Corp.'s ("People's") Amended Complaint [Dkt. 32] (the "Amended Complaint") and states:

### First Defense

The Amended Complaint fails to set forth claims for relief, as detailed below:

1.    People's Count IV for conversion against Wells Fargo fails to state a claim for relief. Wells Fargo was authorized to take possession of the four cranes subject to the Amended

Complaint ("Cranes") and/or to take possession of the proceeds ("Proceeds") from the sale of the Cranes, under the Uniform Commercial Code.

2.  People's Count V for tortious interference by Wells Fargo fails to state a claim for relief, for the following reasons:

    (a)  First, People's alleges it has had a superior interest in the Cranes; therefore, and if so, it was impossible for Wells Fargo to interfere with People's superior interest by Wells Fargo taking, as alleged by the Amended Complaint, an inferior security interest.

    (b)  Second, People's alleges Wells Fargo, pursuant to its financing transactions, paid for the Cranes; therefore, it was impossible for the actions of Wells Fargo to interfere with People's and/or damage People's.

    (c)  Third, according to the affirmative allegations of the Amended Complaint, the actions of Wells Fargo were justified.

3.  People's Count VI for conspiracy to violate Florida Statute § 818.01 fails to state a claim for relief, for the following reasons:

    (a)  In view of the affirmative allegations of the Amended Complaint that Wells Fargo was a secured creditor as to the Cranes, and in view of the provisions of the Uniform Commercial Code authorizing Wells Fargo as a secured creditor to repossess, dispose of the Cranes, and/or retain Proceeds form the sale of the Cranes, it was impossible for Wells Fargo to have committed a crime.

    (b)  If People's security interest in the Cranes was in fact superior to that of Wells Fargo as People's alleges, its security interest in the Cranes was not extinguished.

4.  People's Count VII for fraudulent transfer pursuant to Florida Statute § 726.101 *et seq.* fails to state a claim for relief, for the following reasons:

2

(a) People's, as a creditor of Atlantic/Zeiger, lacks standing to assert a fraudulent transfer action to recover property of Atlantic/Zeiger. The power to bring fraudulent transfer actions to recover assets of a chapter eleven debtor is vested in the trustee or debtor-in-possession, not creditors of the debtor.

(b) The Amended Complaint affirmatively alleges Wells Fargo was a secured creditor as to the Cranes. Under the Florida Uniform Fraudulent Transfer Statute, Florida Statute § 726.102(2), the definition of asset does not include property to the extent it is covered by a valid lien. Thus, the Cranes cannot be the subject of a fraudulent transfer action under Florida Statute § 726.101 *et seq.*

(c) Under Florida Statute § 726.109(5)(b), transfers are not voidable if the transfer resulted from the enforcement of a security interest under Article 9 of the Uniform Commercial Code. The Amended Complaint affirmatively shows the sale of the Cranes were for the benefit of Wells Fargo as a secured creditor.

5. People's Count X for conspiracy to commit conversion fails to state a claim for relief. Civil conspiracy is only actionable if it is attached to an underlying tort or wrongdoing. As set forth above, Wells Fargo is not liable for conversion.

6. People's Count XI for civil theft fails to state a claim for relief for the same reasons that People's Amended Complaint fails to state a claim for relief for conversion.

7. Counts IV, V, VI and X request punitive damages. The Amended Complaint and these Counts fail to state facts and/or legal elements necessary for recovery of punitive damages.

### Second Defense

Wells Fargo answers the corresponding numbered paragraphs of the Amended Complaint as follows:

## Nature of Action

1.  Admitted this action purports to be for declaratory judgment, conversion, tortious interference, conspiracy, fraudulent transfer, replevin, conspiracy to commit conversion and civil theft. Otherwise, denied

## The Parties

2.  Without knowledge and therefore denied.

3.  Admitted.

4.  Without knowledge and therefore denied.

5.  Admitted.

## Jurisdiction and Venue

6.  Admitted.

7.  Without knowledge and therefore denied.

## Background

8.  Without knowledge and therefore denied.

9.  Admitted People's was the largest provider of financing for Atlantic/Zeiger. Denied Atlantic/Zeiger were in the business of renting cranes. Atlantic/Zeiger predominately were in the business of providing cranes with operators. Atlantic/Zeiger provided cranes with its continued possession or control within the hands of its operators and otherwise. Otherwise, without knowledge and therefore denied.

10. Admitted that "Exhibit A" appears to be a promissory note and security agreement; otherwise without knowledge and therefore denied.

11. Without knowledge and therefore denied.

12. Denied the personal property including the Cranes was "inventory". Denied the security interests of People's in all personal property, if any, were a first priority security interest. Admitted that People's security interests, if any, were subject to purchase money security interests and subordination agreements, and subject to any and all other rights of Wells Fargo pursuant to the Uniform Commercial Code. Otherwise, denied.

13. Without knowledge and therefore denied.

14. Admitted Wells Fargo provided the financing for purchase of the Cranes described in Exhibit "B" attached to the Amended Complaint. Admitted Wells Fargo obtained purchase money security interests in the Cranes. The Cranes were "equipment" and not "inventory". Denied the Cranes constituted inventory.

15. Admitted Wells Fargo asserted security interests in the Cranes. Admitted Wells Fargo obtained purchase money security interests in the Cranes. Admitted Wells Fargo did not obtain a subordination agreement from People's in the Cranes. Admitted Wells Fargo did obtain subordination agreements from People's as to two of the eight total cranes financed by Wells Fargo since March 1, 2007. The Cranes are 4 of the 8 cranes. Denied Wells Fargo did not properly perfect its purchase money security interest in the Cranes. Denied the Cranes constituted inventory.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted in January, 2011, Wells Fargo learned Atlantic/Zeiger sold a crane encumbered by a security interest in favor of Wells Fargo without a turnover of the proceeds of sale to Wells Fargo. Admitted Wells Fargo in late January, 2011, and on February 4, 2011,

arranged for repossession specialists to visit the premises of Atlantic/Zeiger, who then had discussions with personnel of Atlantic/Zeiger but at that time did not physically repossess any cranes. Otherwise, denied.

20. Admitted Wells Fargo received an email from a Mr. Mark Welch, who was then acting as a corporate reorganization manager for Atlantic/Zeiger, that pasted-in a name and address of the law firm of Hinshaw Culbertson and in the subject line stated "Zeiger BK counsel".

21. Admitted.

22. Admitted in January, 2010, certain Wells Fargo personnel in Tempe, Arizona, met and discussed a possibility others might consider cranes to be inventory as opposed to equipment and, therefore, to avoid a risk in the future of incorrect perfection of its security interests associated with this possibility, those personnel decided to amend perfection procedures on future transactions. Admitted Mr. Steve Kobriger of Wells Fargo issued an email as a result of this conversation. In all events Wells Fargo considered cranes as equipment and considered as correct perfection of its security interests in cranes according to the classification of cranes as equipment. Otherwise, denied.

23. Admitted Mr. Kobriger issued his email. Denied paragraph 23 includes an accurate and complete description of his email. Otherwise, denied.

24. Admitted Wells Fargo in January, 2010, considered and discussed the risk associated with a possibility some person might consider cranes as inventory as opposed to equipment. At the same time, personnel of Wells Fargo considered and analyzed the matter of subordinations. Wells Fargo decided not to pursue subordinations from People's. Wells Fargo

determined it had properly perfected its security interests in the Cranes as equipment. Otherwise, denied.

25. Admitted Wells Fargo, with continuing and material defaults by Atlantic/Zeiger and knowing it had the rights to repossess the Cranes, and otherwise had rights to recover proceeds from the disposition of the Cranes, engaged repossession specialists to become involved and filed a replevin action to recover the Cranes with the Circuit Court of the State of Florida. Admitted Wells Fargo consented to a sale of the Cranes proposed by Atlantic/Zeiger for purpose of satisfaction of indebtedness owed to Wells Fargo and secured by the Cranes. As a result of the disposition of the Cranes for the benefit of Wells Fargo, it received the Proceeds from sale of the Cranes. Wells Fargo was justified in its consent to the sale and its receipt of the Proceeds, and acted in an acceptable and appropriate manner under the circumstances. Paragraph 25 of the Amended Complaint mischaracterizes events and, therefore, except to the extent of the admissions of this Answer, Wells Fargo denies the allegations of paragraph 25.

26. Denied.

27. Denied.

28. Without knowledge and therefore denied.

29. Admitted that in response to the sale of the Cranes arranged by Steve Zeiger of Atlantic/Zeiger and an agreement of Bill Aurelius of Cleveland Crane to deliver to Wells Fargo the sum of $3,750,000, Wells Fargo agreed to a release of Atlantic/Zeiger, Steve Zeiger and his wife Nancy Zeiger. Wells Fargo was justified in its consent to the sale and its receipt of the Proceeds, and acted in an acceptable and appropriate manner under the circumstances. Otherwise, denied.

30. Admitted that Wells Fargo was entitled to the benefit of the Proceeds, and that Nancy and Steve Zeiger received the benefit of a release of their guaranties predicated upon Wells Fargo's receipt and entitlement to the Proceeds. Otherwise, denied.

31. The sale of the Cranes was usual in that the sale was done for purpose of satisfaction of debt owed by Atlantic/Zeiger and payment of proceeds from collateral to Wells Fargo as a secured creditor. Disposition of the Cranes and/or receipt by Wells Fargo of the Proceeds, were in compliance with rights of Wells Fargo under the Uniform Commercial Code. Wells Fargo had previously arranged for inspection of the Cranes and it appears the buyers, Cleveland Crane and Exact Crane, were familiar with the operation of Atlantic/Zeiger and the cranes of Atlantic/Zeiger. Denied the sale price was $2,000,000 below a fair or appropriate value under the circumstances. Otherwise, without knowledge and therefore denied.

32. Denied.

33. Admitted People's made a demand on Wells Fargo for the Proceeds. Admitted Wells Fargo did not turn over the Proceeds to People's because the Uniform Commercial Code authorized Wells Fargo to retain the Proceeds. Otherwise, denied.

34. Admitted

35. Admitted

36. Denied.

37. Without knowledge and therefore denied.

38. Denied.

39. Denied.

## COUNT I
## DECLARATORY JUDGMENT (28 U.S.C. § 2201)
### (Against Wells Fargo, Cleveland Crane, and Exact Crane)

40. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 39 of the Amended Complaint as though fully set forth herein.

41. Admitted that this purports to be such an action. Otherwise, denied.

42. Denied.

43. Admitted that, under the Uniform Commercial Code for purpose of a purchase money security interest in inventory with priority over a previously perfected security interest in the inventory, a secured creditor should obtain a subordination from or provide a certain notice to the prior perfected secured creditor; otherwise, without knowledge and therefore denied.

44. Admitted Wells Fargo did not obtain subordinations from People's in the Cranes. Admitted Wells Fargo perfected its security interests in the Cranes. Admitted Wells Fargo provided financing for the purchase of the Cranes, filed its UCC-1 financing statements within 20 days of the receipt by Atlantic/Zeiger of the Cranes, and admitted as a result Wells Fargo obtained purchase money security interests with priority over any interests of People's. Denied Wells Fargo was required to provide any advance notice to People's of its financing or its security interests under Section 679.324(2) of the Florida Uniform Commercial Code, for purpose of perfection or priority. The Cranes were equipment and not inventory. Otherwise, denied.

45. Admitted Wells Fargo had superior security interests in the Cranes by virtue of its purchase money security interests in the Cranes as equipment. Admitted Wells Fargo in this litigation alleges its security interests were superior to all other claims. Otherwise, denied.

9

46. Admitted People's claims in this litigation a superior security interest. Otherwise, denied.

47. Admitted People's claims a continuing security interest in the Cranes; otherwise, denied.

48. Admitted.

49. Denied.

50. Denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 50 and denies Plaintiff is entitled to the relief requested.

## COUNT II
## CONVERSION
### (Against Cleveland Crane)

51-55. Count II does not seek relief against Wells Fargo; therefore, no response is required.

## COUNT III
## CONVERSION
### (Against Exact Crane)

56-60. Count III does not seek relief against Wells Fargo; therefore, no response is required.

## COUNT IV
## CONVERSION
### (Against Wells Fargo)

61. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 60 of the Amended Complaint as though fully set forth herein.

62. Denied.

63. Admitted Wells Fargo provided wiring instructions to Bill Aurelius of Cleveland Crane; otherwise, denied.

64. Admitted People's made demand and admitted Wells Fargo refused to turnover the Proceeds. Disposition of the Cranes and/or receipt by Wells Fargo of the Proceeds, were in compliance with rights of Wells Fargo under the Uniform Commercial Code. Otherwise, denied.

65. Denied.

66. Denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 66 and denies Plaintiff is entitled to the relief requested.

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP
### (Against Wells Fargo)

67. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 66 of the Amended Complaint as though fully set forth herein.

68. Without knowledge and therefore denied.

69. Admitted the exemplar of a security agreement attached to the Amended Complaint includes the quoted terms. Admitted the exemplar provides a prohibition against the renting or leasing of cranes and, therefore, by its own form of security agreements, People's acknowledged and ratified the classification of the Cranes as Equipment as opposed to inventory. The UCC defines "inventory" as including leased items.

70. Admitted the exemplar of security agreement made provisions with respect to "Collateral". Otherwise, denied.

71. Admitted Wells Fargo and People's were both aware each had financing relationships with Atlantic/Zeiger. Admitted Wells Fargo in January, 2010, considered and

11

discussed the risk associated with a possibility some person might consider cranes as inventory as opposed to equipment. At the same time, personnel of Wells Fargo considered and analyzed the matter of subordinations. Wells Fargo decided not to pursue subordinations from People's. Wells Fargo determined it had properly perfected its security interests in the Cranes as equipment. Otherwise, denied.

72. Denied.

73. Admitted Wells Fargo under the circumstances agreed to a release of Nancy and Steve Zeiger. Otherwise, denied.

74. Denied.

75. Denied.

76. Wells Fargo did not interfere with the contractual rights, if any, of People's. Under the circumstances and for a number of reasons, Wells Fargo was justified in its actions including, but not limited to, its privilege to protect its own economic interests. Otherwise, denied.

77. Wells Fargo did not interfere with the contractual rights, if any, of People's. Under the circumstances and for a number of reasons, Wells Fargo was justified in its actions including, but not limited to, its privilege to protect its own economic interests. Otherwise, denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 77 and denies Plaintiff is entitled to the relief requested.

## COUNT VI
## CONSPIRACY
### (Against Wells Fargo, Exact Crane, and Cleveland Crane)

78. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 77 of the Amended Complaint as though fully set forth herein.

79. Admitted People's received security agreement forms from Zeiger and/or Atlantic. Without knowledge as to People's loaning money to Atlantic/Zeiger and therefore denied. Otherwise, denied.

80. Admitted the exemplar of a security agreement attached to the Amended Complaint includes the quoted terms. Admitted the exemplar provides a prohibition against the renting or leasing of cranes and, therefore, by its own form of security agreements People's acknowledged and ratified the classification of the Cranes as Equipment as opposed to inventory. The UCC defines "inventory" as including leased items.

81. Admitted the exemplar of security agreement made provisions with respect to "Collateral". Otherwise, denied.

82. Admitted that Wells Fargo became aware of UCC-1 statements filed by People's and likewise that People's became aware of financing and security interests of Wells Fargo. Otherwise, denied.

83. Without knowledge as to Exact Crane and Cleveland Crane and therefore denied. Otherwise, denied.

84. Denied.

85. Denied.

86. Admitted that the Zeigers were released from their guaranties, otherwise denied.

87. Admitted that Wells Fargo consented to sale of the Cranes and to a release of claims, on Friday, February 4, 2011, and that Atlantic/Zeiger filed petitions for relief under chapter eleven of the U.S. Bankruptcy Code on February 18, 2011. Without knowledge as to the date of agreement by Exact Crane and Cleveland Crane to purchase the Cranes and therefore denied. Otherwise, denied.

88. Denied.

89. Denied.

90. Denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 90 and denies Plaintiff is entitled to the relief requested.

## COUNT VII
## FRAUDULENT TRANSFER PURSUANT TO FLA. STAT. § 726.101, *et seq*.
### (Against Wells Fargo, Exact Crane, and Cleveland Crane)

91. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 90 of the Amended Complaint as though fully set forth herein.

92. Admitted that Wells Fargo consented to sale of the Cranes and to a release of claims, on Friday, February 4, 2011, and that Atlantic/Zeiger filed petitions for relief under chapter eleven of the U.S. Bankruptcy Code on February 18, 2011. Without knowledge as to insolvency and inability to pay debts in the ordinary course and therefore denied. Otherwise, denied.

93. Denied.

94. Denied.

95. Without knowledge and therefore denied.

96. Admitted Wells Fargo received and retained the Proceeds. Otherwise, denied.

97. Without knowledge as to Cleveland Crane and Exact Crane and therefore denied. Otherwise, denied.

98. Denied.

99. Denied. People's cannot complain that the sale was made with an intent to hinder, delay or defraud People's, for the following reasons:

(a) Count VII of the Amended Complaint is *void ab initio* for lack of standing. Any fraudulent transfer action constitutes property of the bankruptcy estates of Zeiger Crane and Atlantic Leasing. Any attempt by Plaintiff to assert this claim is in violation of 11 U.S.C. § 362 and terms of the confirmed plan of reorganization, and is void.

(b) The Amended Complaint affirmatively alleges Wells Fargo was a secured creditor as to the Cranes. Under the Florida Uniform Fraudulent Transfer Statute, Florida Statute § 726.102(2), the definition of asset does not include property to the extent it is covered by a valid lien. Thus, the Cranes cannot be the subject of a fraudulent transfer action under Florida Statute § 726.101 *et seq*.

(c) Under Florida Statute § 726.109(5)(b), transfers are not voidable if the transfer resulted from the enforcement of a security interest under Article 9 of the UCC. The Amended Complaint affirmatively shows the sales of the Cranes were for the benefit of Wells Fargo as a secured creditor.

100. Denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 100 and denies Plaintiff is entitled to the relief requested.

## COUNT VIII
## REPLEVIN PURSUANT TO FLA. STAT. § 78.055
(Against Cleveland Crane)

101-109. Count VIII does not seek relief against Wells Fargo; therefore, no response is required.

## COUNT IX
## REPLEVIN PURSUANT TO FLA. STAT. §78.055
(Against Exact Crane)

110-118 Count IX does not seek relief against Wells Fargo; therefore, no response is required.

## COUNT X
## CONSPIRACY TO COMMIT CONVERSION
(Against Wells Fargo, Exact Crane, and Cleveland Crane)

119. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 118 of the Amended Complaint as though fully set forth herein.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Admitted Wells Fargo provided a release of Nancy and Steve Zeiger from their guaranties. Otherwise denied.

126. Admitted that Wells Fargo consented to sale of the Cranes and to a release of claims, on Friday, February 4, 2011, and that Atlantic/Zeiger filed petitions for relief under chapter eleven of the U.S. Bankruptcy Code on February 18, 2011. Without knowledge as to the

16

date of agreement by Exact Crane and Cleveland Crane to purchase the Cranes and therefore denied. Otherwise, denied.

127. Denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 127 and denies Plaintiff is entitled to the relief requested.

## COUNT XI
### CIVIL THEFT PURSUANT TO FLA. STAT. § 812.014
(Against Wells Fargo)

128. Wells Fargo realleges and incorporates by reference its responses to paragraphs 1 through 127 of the Amended Complaint as though fully set forth herein.

129. Denied.

130. Denied.

131. Denied.

132. Admitted Wells Fargo accepted receipt of the Proceeds. Wells Fargo was entitled to the Proceeds. Otherwise, denied.

133. Admitted Wells Fargo accepted receipt of the Proceeds. Wells Fargo was entitled to the Proceeds. Otherwise, denied.

134. Denied.

135. Denied.

136. Admitted People's made a demand on Wells Fargo for payment of the Proceeds. Admitted Wells Fargo did not turn over the Proceeds. Wells Fargo was entitled to the Proceeds.

137. Admitted that People's made a written demand upon Wells Fargo and that Wells Fargo refused to comply with the demand. Disposition of the Cranes and/or receipt by Wells

17

Fargo of the Proceeds, were in compliance with rights of Wells Fargo under the Uniform Commercial Code. Otherwise, denied.

Wells Fargo responds to the unnumbered paragraph following paragraph 137 and denies Plaintiff is entitled to the relief requested.

Any allegation not specifically admitted is deemed denied.

### Affirmative Defenses

### FIRST AFFIRMATIVE DEFENSE

To the extent People's is successful in establishing security interests superior to Wells Fargo's security interests in the Cranes, People's should be required first to marshal its other collateral.

### SECOND AFFIRMATIVE DEFENSE

In the event that Plaintiff establishes its lien in the Cranes was superior to Wells Fargo's lien in the Cranes, Wells Fargo under the Uniform Commercial Code is entitled to the Proceeds from the sale of the Cranes free of Plaintiff's security interest.

### THIRD AFFIRMATIVE DEFENSE

Wells Fargo received the Proceeds from the disposition of the Cranes in good faith and without knowledge that the receipt of the Proceeds violated the rights of Plaintiff's security interest.

### FOURTH AFFIRMATIVE DEFENSE

Prior to sale of the Cranes, for approximately one year or more prior to the sale, People's believed the security interests of Wells Fargo were inferior or possibly inferior to the security interests of People's. In this respect, People's had access to publicly available information concerning the security interests of Wells Fargo, People's had received information concerning

the security interests of Wells Fargo, People's had analyzed information concerning the security interests of Wells Fargo, and People's had communicated with personnel of Wells Fargo and Atlantic/Zeiger concerning the security interests of Wells Fargo. Nevertheless, People's failed to advise Wells Fargo of People's beliefs of inferiority or possible inferiority of the security interests of Wells Fargo. Wells Fargo relied on this conduct of People's in taking action to consent to the sale of the Cranes and to take possession of the Proceeds. As a result of the foregoing, People's is estopped from contesting, and waived any rights to contest, the security interests and priority of security interests of Wells Fargo.

### FIFTH AFFIRMATIVE DEFENSE

People's ratified and affirmed the security interests and priority of the security interests of Wells Fargo by its numerous actions and omissions in this matter including, but not limited to, its business records which acknowledged the priority of Wells Fargo's security interests and its security agreements which acknowledged cranes of Atlantic/Zeiger were not to be rented or leased, and were not to be outside the possession and control of Atlantic/Zeiger.

Dated: December 12, 2011

                        Respectfully Submitted,

                        /s/ Charles F. Ketchey, Jr.
                        CHARLES F. KETCHEY, JR   FBN 0181735
                        cketchey@trenam.com
                        STEPHANIE CRANE LIEB   FBN 0031806
                        slieb@trenam.com
                        JUSTIN J. HORAN   FBN 0060871
                        jhoran@trenam.com
                        TRENAM KEMKER
                        Bank of America Plaza, Suite 2700
                        101 E. Kennedy Boulevard
                        Tampa, FL  33602-5150
                        Ph: (813) 223-7474 | Fax: (813) 229-6553
                        Attorneys for Defendant, Wells Fargo Equipment Finance, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing DEFENDANT WELLS FARGO EQUIPMENT FINANCE, INC.'S ANSWER TO PLAINTIFF PEOPLE'S UNITED EQUIPMENT FINANCE CORP.'S AMENDED COMPLAINT was served by the Court's CM/ECF Noticing System on December 12, 2011 on all counsel or parties of record on the Service List Below.

/s/ Charles F. Ketchey, Jr.

## SERVICE LIST

**Scott B. Cosgrove, Esquire**
scosgrove@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
The Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131

**James J. Stricker, Esquire**
jstricker@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
1633 Broadway
New York, NY 10019

**Paul L. Orshan, Esquire**
paul@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134

**Jose-Carlos A. Villanueva, Esquire**
jcv@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134