IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

Case No.: 11-80291-CIV-MARRA/JOHNSON

PEOPLE'S UNITED EQUIPMENT
FINANCE CORP., a Texas Corporation,
formerly known as Financial Federal
Credit Inc.,

       Plaintiff,

vs.

WELLS FARGO EQUIPMENT
FINANCE, INC., a Minnesota
corporation; EXACT CRANE &
EQUIPMENT, LLC, an Ohio limited
liability company; and CLEVELAND
CRANE & SHOVEL SALES, INC., an
Ohio corporation,

       Defendants.

_____/


**PLAINTIFF'S OPPOSITION TO THE MOTION OF WELLS FARGO EQUIPMENT
FINANCE TO DISMISS CERTAIN COUNTS OF THE AMENDED COMPLAINT**

       Plaintiff People's United Equipment Finance Corp., f/k/a Financial Federal Credit Inc.

("People's"), by and through undersigned counsel, respectfully submits its opposition to the

Wells Fargo Equipment Finance, Inc.'s Motion To Dismiss Counts IV, V, VI, VII, X and XI Or

Alternatively, Motion For Judgment On The Pleadings As To Counts IV, V, VI, VII, X and XI of

Plaintiff's Amended Complaint ("WF Mot.").

## PRELIMINARY STATEMENT

People's seeks by this action to recover its damages from Wells Fargo for its intentional misconduct – indeed its fraud – in stealing from People's millions of dollars in collateral (construction cranes (the "Cranes") and the proceeds of the sale of those cranes) to which Wells Fargo knew it was not entitled.  With discovery proving that Wells Fargo did in fact knowingly and intentionally steal the Cranes and/or the proceeds of their sale at the expense of People's, Wells Fargo has filed this motion in a desperate effort to try to avoid its day of reckoning.  In doing so, Wells Fargo takes an entirely new tack – *i.e.,* that pursuant to the Florida Uniform Commercial Code (Fla. Stat. Chapter 679 (2011) (the "UCC")), Wells Fargo supposedly took possession of the Cranes and resold them – which Wells Fargo has repeatedly denied and is not even an allegation in the Amended Complaint.  Of course, if Wells Fargo is now admitting that it did in fact take possession of the Cranes and sold them, the UCC makes clear that as a subordinate lienholder, Wells Fargo's actions violated the law.  Indeed, there is no basis whatsoever under the UCC to allow a junior creditor to take collateral subject to a senior lien, sell the collateral without the senior creditor's knowledge, for a price well below market value, and retain the proceeds of the sale.  Accordingly, as a factual and legal matter, Wells Fargo's motion is without basis and should be denied in its entirety, to allow People's to proceed to a trial of its claims (or summary judgment) based on the evidence and law.

## FACTS

As alleged in the Amended Complaint, People's loaned monies to non-parties Zeiger Crane Rental, Inc. and Atlantic Leasing Co. (collectively, "Zeiger"), and at the latest by 2000, had properly perfected its security interest in all of the assets of Zeiger, including all cranes and other equipment that Zeiger held for rental or sale.  (Amended Complaint ("Amend. Cmplt.") ¶¶

9-12.)   In 2007-2008, Wells Fargo loaned money to Zeiger, but did not provide notice to People's of its intended financing, nor did it request from People's a subordination with respect to the Cranes – essential steps under the UCC for Wells Fargo to obtain a "purchase money security interest" on "inventory" such as the Cranes that would give Wells Fargo priority to the Cranes as collateral.  (*Id. ¶¶14-15.*)  Wells Fargo initially argued in this action that the Cranes were "equipment" and not "inventory" under the UCC (because they often were rented by Zeiger with an operator), and thus that it supposedly did not need to send notice or obtain subordination to obtain a priority.  However, discovery has proven that Wells Fargo was fully aware that the UCC inventory procedures applied to its loan and any effort to obtain priority in the collateral.[1] For example, in a January 29, 2010 e-mail that it belatedly produced in this action, Wells Fargo admitted:

> Rental equipment financing, particularly crane rental financing, needs to be perfected using inventory procedures, i.e., searches are necessary and we must provide notice filings to blanket lienholders.  This applies whether or not the rental of the equipment is proposed as a bare rental or rental with operator. … it appears that regardless of whether the renting company rents with or without an operator, the rented equipment is considered inventory, not equipment.[2]

---

[1]      As Wells Fargo notes in its motion, "[t]he essence of this matter is whether the Cranes constitutes "inventory" or "equipment" under the Uniform Commercial Code, as there are different priority rules for obtaining a "purchase money security interest" in the two types of collateral.  (Wells Fargo Mem. at 4.)

[2]      *See* Amend. Cmplt. ¶ 23.  In another memo belatedly produced, Wells Fargo made clear that it was aware of the issue in 2008, admitting that "Wells Fargo gave a directive to Credit starting in 2008 that this type of financing, especially cranes in these circumstances where are rentals are involved, carried potential risks and Credit and Funding were to search and clear going forward."  While People's Amended Complaint fully complies with the notice pleading requirements of the Federal Rules of Civil Procedure, to the extent the Court believes that additional factual pleading of the evidence adduced to date is necessary, People's respectfully requests leave to amend its complaint to add these evidentiary allegations adduced through discovery in this action.  *See infra* at 18-19.

As People's alleged, and Wells Fargo has admitted in discovery, Wells Fargo did not comply with these inventory procedures with respect to the Cranes, and thus did not have a "purchase money security interest" in, or otherwise have priority to, the Cranes.  (*See* Amend. Cmplt. ¶ 22.) When Zeiger experienced financial difficulty in 2009, Wells Fargo analyzed the issue, recognized that it had failed to properly obtain a priority security interest, and decided to "lie low" and try to conceal the issue from People's.  (*Id.* ¶ 24.)

In 2011, upon realizing that Zeiger was about to file for bankruptcy, and Wells Fargo's subordinate position would be discovered, Wells Fargo schemed to steal the Cranes for its benefit, in an effort to harm People's.  (*Id.*  ¶¶25-26.)  After threatening to take legal action against Zeiger and its principals (who had executed personal guarantees), on February 4, 2011, Wells Fargo contacted defendant Cleveland Crane and Shovel, Inc. ("Cleveland Crane") and offered to sell the Cranes at a steep discount to market value, if Cleveland Crane would agree to wire the money that very day, purchasing the Cranes "sight unseen."    As Cleveland Crane's principal testified:

> Q.  Now, am I correct from your testimony that the first time you spoke with anyone at Wells Fargo about acquiring these cranes was on Friday, February 4th?
> A.  Yes.
> Q.  And Wells Fargo indicated to you that they needed to close the deal that day?
> MR. KETCHEY:  Objection.
> A.  Yes.
> Q.  Did Wells Fargo tell you why they needed to close on February 4th, 2011?
> A.  No.  I think he was pushing the fact that he just wanted to get it done as quick as possible.
> Q.  Now you indicated that Mr. Clement [of Wells Fargo] was pushing to be paid on that Friday, but you didn't pay until the following week.  Is that generally correct?
> A.  I believe  --
> Q.  Tell me what you recall about that --

A. He was pushing it and pushing it and I think I probably
ignored him by the end of the day. I just let the phone ring and that
was it and got back -- and then went back to it on Monday.

Q. Did you, in fact, wire the funds on Monday?

A. I believe so. You probably have that in front of you,
whether I have the right recollection or not.

Q. To whom did you wire the funds?

A. Wells Fargo.[3]

Notably, neither Wells Fargo nor anyone else provided prior notice of the "sale" of the Cranes to People's – the senior lienholder. (Amend. Cmplt. ¶ 32.) When People's learned of the "sale" it immediately made demand on Wells Fargo for the proceeds of the sale of the Cranes, but Wells Fargo has refused to transfer the proceeds to People's, the rightful owner. (*Id.* ¶ 33.)

## ARGUMENT

Wells Fargo's entire motion is based on upon the false premise that it is somehow "undisputed" that Wells Fargo acted in good faith and disposed of the Cranes in accordance with the provisions of the Florida UCC, and that People's superior lien is somehow irrelevant to the causes of action alleged in the Amended Complaint (other than Cause I). (*See* WF Mot. At 6-20.) Wells Fargo's premise completely ignores the law and the allegations of the Amended Complaint – which allegations have been proven discovery taken in this action to be absolutely true. Given the fallacy of its premise, Wells Fargo's arguments that People's has somehow failed to properly state a claim against Wells Fargo (or that it is entitled to judgment on the pleadings) are baseless, and Wells Fargo's motion should be denied in its entirety.

---

[3]     People's put Wells Fargo on notice of this allegation (Amend. Cmplt. ¶¶ 26-32), and can amend the complaint to add this testimony if that is deemed necessary.

I.       **THE STANDARD OF REVIEW ON WELLS FARGO'S MOTION IS WELL-ESTABLISHED, AND MUST BE DENIED UNLESS IT APPEARS BEYOND DOUBT THAT PEOPLE'S CANNOT PROVE ANY SET OF FACTS TO SUPPORT ITS CLAIMS**

As the Eleventh Circuit Court of Appeals held in *Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 Fed. Appx. 505 (11th Cir. Fla. 2009) "'the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 508 (*quoting S.E.C. v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))).

The standard for consideration of a motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings is the same. *Bryan Ashley Int'l, Inc. v. Shelby Williams Indus., Inc.*, 932 F. Supp. 290, 291 (S.D. Fla. 1996) ("When a motion filed pursuant to Fed. R. Civ. P. 12(c) raises a Fed. R. Civ. P. 12(b)(6) defense, the court should apply the same standard used to evaluate a . . . 12(b)(6) motion"); *Salanitro v. United States OPM*, 2011 U.S. Dist. LEXIS 73734 (M.D. Fla. July 8, 2011) (same). *See also Allah v. Hayman,* 2011 U.S. App. LEXIS 17860 (3d Cir. Aug. 25, 2011) ("The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)" (*citing Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004); *Stokes v. Lusker,* 425 Fed. Appx. 18 (2d Cir. 2011) (same).

Notably, Wells Fargo did not file a motion to dismiss any of the claims asserted by People's in its original Complaint, including People's claims for conversion (Count IV), tortious interference with contract (Count V), conspiracy (Count VI), fraudulent transfer (Count VII), and conspiracy to commit conversion (Count X). The reason for Wells Fargo's conscious decision not to even attempt to dismiss those claims is that the facts and law make clear that People's has

properly alleged facts that support its claims against Wells Fargo.  It is only after discovery has proceeded, with the evidence clearly supporting People's claims – such that People's intends to move for summary judgment on most of its claims at the close of fact discovery – that Wells Fargo has sought dismissal to attempt to avoid liability for its misconduct.  The simple fact is that People's has properly stated its claims against Wells Fargo, and Wells Fargo's motion should be denied in its entirety, so that the claims can properly be adjudicated.

## II.   WELLS FARGO'S ARGUMENTS REGARDING ITS SUPPOSED RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE ARE MISLEADING AT BEST, AND IN ANY EVENT DO NOT SUPPORT ITS MOTION

Wells Fargo bases its motion solely on its erroneous claim that Fla. Stat. §§ 679.609-610 supposedly provided it with an unfettered right as a junior lienholder to possess and sell the Cranes and retain the proceeds of sale, and thus that it supposedly "cannot be liable for conversion" or any of People's other claims.  (WF Mot. at 6-7.)  However, Wells Fargo has completely misstated the law and ignores People's allegations in the Amended Complaint that Wells Fargo violated the very provisions of the UCC to which it cites.

**First**, Wells Fargo ignores the Official Comment to Section 609, the very section on which it relies, which makes clear that:

> [C]onflicting rights to possession among secured parties are resolved by the priority rules of this Article.  **Thus, a senior secured party is entitled to possession as against a junior claimant.  Non-UCC law governs whether a junior secured party in possession of collateral is liable to the senior in conversion.  Normally, a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right to the collateral would be liable in conversion**.

(Official Comment, Uniform Commercial Code (the "Official Comment") § 6-609, Comment 5; emphasis added.)  Of course, here People's has alleged that it was the senior secured party,

entitled to possession of the collateral from Wells Fargo, a junior secured party in possession, who refused to relinquish the collateral.  (*See* Amend. Cmplt. ¶ 33.)

**Second**, Wells Fargo's citation to the Official Comment to Section 679.610 that disposition of collateral by a junior lienholder "does not of itself constitute a conversion or otherwise give rise to liability in favor of the holder of the senior security interest'" (WF Mot. at 7, quoting Official Comment 5, § 9-610), is based only a partial, and misleading, quote from that Official Comment.  The portion of the Official Comment that Wells Fargo omitted expressly provides that a senior creditor may have a "non-Article 9 claim [*e.g.,* conversion] to proceeds of a junior's disposition," and that Section 9-615(g) (Fla. Stat. § 679.615(7)) would only "protect a junior that acts in good faith and without knowledge that its actions violate the rights of a senior party."  (*Id.*)    Indeed, Fla. Stat. § 9-615(7) makes clear that a junior creditor's disposition and receipt of proceeds is only valid as against a senior creditor if the proceeds are received "in good faith and without knowledge that the receipt violates the rights of the holder of a security interest … that is not subordinate" to the junior creditor's disposition.  (Fla. Stat. § 679.615(7).)  Here, People's has clearly alleged – and the evidence adduced through discovery has confirmed without any doubt – that Wells Fargo had actual knowledge of People's senior security interest in the Cranes and sale proceeds, that Wells Fargo had failed to properly perfect its lien, and that it intentionally chose to "lie low," before arranging a non-arms length sale, at a below-market rate, without notice to People's, so that Wells Fargo could steal the value of the collateral before Zeiger filed for bankruptcy protection.  (*See* Amend. Cmplt. ¶¶ 16-32.)

**Third**, Wells Fargo completely ignores the fact that the same Official Comment to Section 610 provides:

> **The holder of a senior security interest is entitled, by virtue of its priority, to take possession of collateral from the junior**

> **secured party** and conduct its own disposition, provided that the
> senior enjoys the right to take possession of the collateral from the
> debtor. **The holder of a junior security interest normally must
> notify the senior secured party of an impending disposition**.

(Official Comment 5, U.C.C. § 9-610; emphasis added.)  In particular, Fla. Stat. § 679.611

expressly provides that "a secured party that disposes of collateral under § 679.610 [the

provision on which Wells Fargo relies in its motion] shall send to the persons specified in

subsection (3) a reasonable authenticated notification of disposition."  (Fla. Stat. § 679.611(2).)

Subsection (3) provides that "[t]o comply with subsection (2), the secured party shall send an

authenticated notification of disposition to: … any other secured party or lienholder, that, 10

days before the notification date, held a security interest in or other lien on the collateral."  (Fla.

Stat. § 679.611(3).)[4]

In moving to dismiss People's claims as a matter of law, Wells Fargo has completely

ignored the essential and required notice provisions, because as People's alleged (and it cannot

reasonably be disputed), "[a]t no time prior to February 4, 2011 did any of the defendants or

Atlantic/Zeiger inform People's of the intent to sell the Cranes, the price at which the cranes

would be "sold," or that the proceeds were going to be taken by the junior lien holder, Wells

Fargo in violation of People's rights."  (Amed. Cmplt. ¶ 32.)[5]

Even assuming Wells Fargo is going to somehow argue that People's had received some

notice that complied with Fla. Stat. § 679.611, the statute makes clear that "[w]hether the

---

[4]     Recognizing the importance of the required notice, the Florida UCC expressly provides
accepted forms of notice.  (Fla. Stat. § 679.613.)

[5]     While Wells Fargo denied People's allegation, it has done so without any factual or legal
basis, and notably has not produced any such notice in discovery in this action.  In any event,
Wells Fargo's denial of People's allegation certainly is insufficient to grant a dismissal of
People's claims.

contents of a notification that lacks any of the information specified in subsection (1) are nevertheless sufficient is a question of fact" (Fla. Stat. § 619.613(2)), thus precluding Wells Fargo's motion to dismiss/judgment on the pleadings.

**Fourth**, Section 679.610 upon which Wells Fargo relies expressly provides that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." (Fla. Stat. § 679.610(2).) As People's alleged and discovery has proven, Wells Fargo's sold the Cranes at significantly below market price, sight unseen to the purchasers, demanding payment that very day, all without any notice to People's as the senior lienholder. (Amend. Cmplt. ¶ 31.) Clearly, such procedures are not "commercially reasonable" as a matter of law, precluding People's from even having an opportunity to prove its claims in court.

**Fifth**, Wells Fargo's argument that Fla. Stat. § 679.615 *precluded* Wells Fargo from paying any of the proceeds to a senior lienholder such as People's (WF Mot. at 7-8), is evidence of the lengths to which Wells Fargo will go to concoct some argument to justify its tortious conduct. Indeed, the same section makes clear that it is only when a junior creditor's disposition and receipt of proceeds is "in good faith and without knowledge that the receipt violates the rights of the holder of a security interest … that is not subordinate," can the junior creditor escape liability for retaining the proceeds of sale. (Fla. Stat. § 679.615(7).) As shown above (*supra* 3-5), People's has alleged, and it cannot reasonably be disputed, that Wells Fargo did not act in good faith, and had actual knowledge that its receipt of the proceeds of sale violated People's rights.

*   *   *

In short, while the Florida UCC provides junior lienholders such as Wells Fargo with certain rights, that fact does not eliminate the priority among lienholders, and certainly does not allow a junior lienholder to sell collateral on commercially unreasonable terms, without notice to senior lienholders, and retain the proceeds, all without any ramifications.  Accordingly, the entire premise of Wells Fargo's motion is without basis, and its motion must be denied.

### III. PEOPLE'S HAS PROPERLY STATED A CLAIM AGAINST WELLS FARGO FOR CONVERSION

Wells Fargo's motion to dismiss People's conversion claim (Count IV) is based entirely on its erroneous position that it "was entitled to possess and dispose of the Cranes and Wells Fargo was entitled to the Proceeds from the sale of the Cranes."  (WF Mot. at 8-9.)  As shown above, Wells Fargo has misstated the law, and it did not have a right to possess the Cranes superior to People's right, did not dispose of the Cranes in a commercially reasonable manner, did not provide People's with notice as required by the Florida UCC, and is not entitled to retain the proceeds of sale because it did not act in good faith at a time it had actual knowledge that it was interfering with People's senior lien.

Wells Fargo's reliance on the Missouri appellate court decision  *First National Bank of Steelville, N.A. v. ERB Equipment Company, Inc.*, 921 S.W.2d 57 (Mo. App. 1996) is misplaced. In *ERB*, the junior lienholder provided notice to the senior lienholder of the impending sale of the collateral, as evidenced by senior lienholder's letter before the sale that "all proceeds from the auction should be paid to" the senior lienholder.  *Id.* at 60.  As a result of that notice provision, the senior lienholder could have, but did not, demand possession of the collateral so that it could dispose of it.  (*See* Official Comment, 5, U.C.C. § 9-610.)  Here, Wells Fargo did not provide People's with any advanced notice as required by the UCC.

Similarly, Wells Fargo misrepresents the holding of *City Bank v. Compass Bank*, 717 F. Supp. 2d 599 (W.D. Tex. 2010) to try to support its argument that People's conversion claim must be dismissed.  (WF Mot. at 10-11.)  In *City Bank*, "[d]uring the entire period that [the junior creditor] held these proceeds in the form of a credit … [the senior lienholder] had consented to [the junior creditor's] custody and use of the funds."  717 F. Supp. 2d at 612.  As the court made clear in dismissing the claim for conversion, "[c]onsent defeats a claim for conversion."  (*Id.*)  Moreover, in *Erb* the junior creditor "later lawfully transferred these proceeds back to" the debtor and as the Court held, a junior creditor "does not need to justify the retention of encumbered receivables proceeds when it did not actually retain any receivables proceeds." (*Id.* at 620.)  By contrast, here Wells Fargo took possession of the Cranes and/or the proceeds without People's knowledge – and certainly without its consent – and retained the proceeds, rather than remitting the proceeds to the debtor (*i.e.,* Zeiger), as the junior lienholder had done in *City Bank*.

Indeed, Wells Fargo admits that courts have held that a junior secured creditor such as Wells Fargo is liable for conversion to a senior creditor such as People's – a fact that is expressly noted in the Official Comments to the UCC.  (Official Comment 5, § 6-609 ("Normally, a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right to the collateral would be liable in conversion").)  Wells Fargo's argument that *In re Machinery, Inc.*, 337 B.R. 368 (E.D. Mo. 2005) is limited to situations where a junior creditor takes collateral from a senior creditor (WF Mot. at 11) ignores the actual holding.  Rather, the court in *In re Machinery* expressly cited Official Comment 5 to Section 9-609, that "a junior secured creditor who refuses to surrender possession of collateral to a senior secured creditor upon the senior's demand is liable in conversion to the senior."  337 B.R. at 375.

Similarly, Wells Fargo's effort to distinguish *In re Halmar Distributors, Inc.*, 968 F.2d 121 (1st Cir. 1992) (WF Mot. at 11-12) is baseless.  In *Halmar*, the First Circuit Court of Appeals reversed summary judgment in favor of a junior lienholder, expressly holding that the junior lienholder could be held liable to the senior lienholder for conversion where the junior lienholder had possession of collateral securing the senior lienholder's claim, and the senior lienholder did not consent to the junior lienholder's possession and retention of that collateral.  968 F.2d at 125. Wells Fargo's argument that *Halmar* is somehow distinguishable because People's did not allege that it had repossessed the Cranes prior to the sale or that Wells Fargo took the proceeds of the sale from the possession of People's (WF Mot. at 11), ignores the fact that neither of these events occurred in *Halmar* either.  Rather, the First Circuit held that absent consent of the senior lienholder to the junior lienholder receiving collateral, the junior lienholder was liable to the senior lienholder for conversion.  968 F.2d at 125.   *See also Taylor Rental Corp. v. J.I. Case Co.*, 749 F.2d 1526, 1530 (11th Cir. 1985) ("As an initial matter, we note, as did the district court, that an action for conversion is a proper remedy for a secured party to bring against a third party when its collateral has been disposed of by the debtor"), *citing United States v. McCleskey Mills, Inc.*, 409 F.2d 1216 (5th Cir.1969).

### IV.     PEOPLE'S HAS PROPERLY STATED A CLAIM AGAINST WELLS FARGO FOR TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

People's has properly stated a claim against Wells Fargo for tortious interference with its contracts with Zeiger.  (Amend. Cmplt. ¶¶ 67-77.)  None of Wells Fargo's arguments for the dismissal of this claim have any merit, and its motion should be denied.

First, Wells Fargo's argument that People's tortious interference with People's senior claim to the collateral somehow fails "because it did not allege that in fact its security interests

are inferior" (WF Mot. at 12), is disingenuous.  As alleged in the complaint, Wells Fargo has asserted that it had rights in the Cranes and proceeds of sale superior to People's rights (*see, e.g.,* Amend. Cmplt. ¶ 45), which if ever upheld, would clearly interfere with People's earlier, superior rights in the assets of Zeiger.  There is no obligation under the Federal Rules of Civil Procedure – and certainly nothing to which Wells Fargo can cite – that would require People's to affirmatively allege that Wells Fargo did in fact have a superior lien in order to support this claim.[6]

Second, Wells Fargo's conclusory (and erroneous) assertion that People's was not damaged by Wells Fargo's interference because absent Wells Fargo's loans, Zeiger would not have obtained the Cranes to serve as collateral for People's loans (WF Mot. at 12-13) is baseless.[7]  It is undisputed that Zeiger did in fact acquire the Cranes, which became collateral subject to People's first priority lien.  In any event, People's has alleged such damage (Amend. Cmplt. ¶ 77), and is entitled to proceed with its claims.  If Wells Fargo truly believes after discovery that People's has no damage, it can move for summary judgment.

Third, Wells Fargo's argument that People's has somehow failed to state a claim for tortious interference relating to Wells Fargo's sale of the Cranes also must be rejected.  As People's alleged, its contract with Zeiger provided (among other things) that Zeiger shall not "sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or

---

[6]    To the extent that the Court accepts Wells Fargo's argument and believes that an allegation such as "to the extent that Wells Fargo's assertion of a superior right to possession of the Cranes and/or proceeds of sale is upheld, Wells Fargo has tortiously interfered with People's contractual agreements with Zeiger" is necessary, People's requests leave to amend the complaint to do so.  (*See infra* 18-19.)

[7]    Wells Fargo's argument that the Court can only look to the additional assets acquired by Zeiger as a result of the financing, and ignore the additional resulting liabilities and other negative impacts occurring from the Wells Fargo liens, is simply not supported by any law or logic.

otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral." (Amend. Cmplt. ¶ 69.) People's further alleged that "Wells Fargo encouraged, aided and abetted the breach of contract by, among other things, negotiating the price for the purported 'sale' of the cranes," thereby interfering with People's rights. (*Id.* at ¶¶ 73-77.) Wells Fargo simply regurgitates its flawed argument that the UCC supposedly allowed it to interfere with People's senior lien. (WF Mot. at 12-13.) Of course, that is not the law. (*Supra* at 7-11.)

Fourth, Wells Fargo's argument that People's tortious interference claim should be dismissed because where a party takes actions that are "done by proper means" it is free of any liability – ignores People's allegations that Wells Fargo's actions were not done "by proper means." (Amend. Cmplt. ¶¶ 16-32.) Moreover, Wells Fargo's claim that as long as it "was concerned about its ability to collect on its loans" it could do anything whatsoever to protect its financial interests (WF Mot. at 14), is simply not the law. Obviously, a party cannot violate the law simply to benefit financially – which is exactly what Wells Fargo did here, and is now desperately trying to avoid its day of reckoning through a trial (or summary judgment).

## V. PEOPLE'S HAS PROPERLY STATED A CLAIM AGAINST WELLS FARGO FOR CONSPIRACY TO VIOLATE SECTION 818.01 OF THE FLORIDA STATUTES

People's has properly alleged a cause of action against Wells Fargo for conspiracy to violate Section 818.01 of the Florida Statutes. Wells Fargo's admits that the cause of action requires an "intent to defeat, hinder or delay the enforcement of such lien" (WF Mot. at 14), which People's has alleged. (*See, e.g.,* Amend. Cmplt. ¶¶ 76, 77, 89, 99.) Wells Fargo's argument that it had a right as a junior creditor to take possession of the Cranes, sell the Cranes at below-market prices, without notice to People's (WF Mot. at 14-15), simply misstates the law,

and in any event does not provide a basis for dismissal given People's factual allegations that Wells Fargo did not act in a commercially reasonable manner, and improperly concealed its conduct with respect to the Cranes.  (*Supra* at 7-11.)

## VI.   PEOPLE'S HAS STANDING AND HAS PROPERLY STATED A CLAIM FOR FRAUDULENT TRANSFER AGAINST WELLS FARGO

People's has standing to pursue its claim for fraudulent transfer against Wells Fargo because the collateral at issue was People's collateral, and any recovery would be delivered to People's, not the debtor, Zeiger.   While People's is aware that generally fraudulent transfer claims become property of the estate upon filing of a bankruptcy, where the recovery would belong only to the creditor, such as here, People's has standing.  As the court held in *City Bank v. Compass Bank*, 717 F. Supp. 2d 599 (W.D. Tex. 2010) (cited by Wells Fargo at WF Mot. At 9-10), a creditor had standing to proceed with a fraudulent transfer claim as to one asset "because, if it prevails on this claim, the money would not be returned to the bankruptcy estate for the benefit of all the general creditors," but rather would be awarded to the creditor.  *Id*. at 610. Here, there can be no dispute that any recovery on People's fraudulent conveyance claim against Wells Fargo relating to the Cranes would be awarded to People's, not to the Zeiger estate. Accordingly, People's has standing.

Wells Fargo's argument that People's fraudulent conveyance claim must be dismissed because the Cranes were subject to a lien (WF Mot. at 16), is baseless and non-sensical.  Under Wells Fargo's interpretation, if a debtor transfers to an unsecured creditor a multi-million dollar piece of collateral subject to a lien, in satisfaction of an unsecured debt for $5, the creditors and/or the trustee would be precluded from pursuing a fraudulent conveyance action against the unsecured creditor.  That obviously makes no sense, and Wells Fargo does not cite any court that

has ever agreed with that interpretation.   Rather, the relevant provision of the code simply means that if the transfer is to satisfy the senior lien, it is not fraudulent.

Similarly, Wells Fargo's argument that People's failed to state a claim for fraudulent conveyance because the transfer supposedly was made "in compliance with Article 9 of the Uniform Commercial Code" (WF Mot. at 16), misstates the law, and ignores People's allegations in this action and the UCC that in fact the transfer was not made in compliance with Article 9. (*Supra* 7-11.)

### VII.   PEOPLE'S HAS PROPERLY STATED  A CLAIM FOR CONSPIRACY TO COMMIT CONVERSION

Wells Fargo's motion to dismiss People's claim for conspiracy to commit conversion is based solely on its argument that the People's conversion claim (Count IV) supposedly must be dismissed.  (WF Mot. at 17.)  As shown above (*supra* at 11-13), People's has properly asserted a claim for conversion, and thus its conspiracy to commit conversion claim must also stand.

### VIII.   PEOPLE'S HAS PROPERLY STATED  A CLAIM FOR CIVIL THEFT

Wells Fargo's argument that it did not need People's consent to take possession of and dispose of the Cranes (WF Mot. at 18) is not true.  As shown above (*supra* at 7-11), the UCC required Wells Fargo to notify People's of its intent to dispose of the Cranes, so that (among other things) People's could demand from Wells Fargo the possession of the Cranes.  Indeed, on this motion Wells Fargo relies on cases that have drawn the distinction between those instances in which a senior creditor consents to the junior creditor possessing and disposing of collateral (in which case the junior creditor is not subject to claims), and those instances in which the senior creditor does not consent (in which case the junior creditor may be liable).  (*Supra* 11-13.)

Wells Fargo's argument that People's supposedly "did not have a possessory interest in the Cranes at the time of the sale," while at the same time claiming that Wells Fargo, as the junior lienholder did have a possessory interest (WF Mot. at 18), is similarly without basis.  As Wells Fargo admits, the UCC provides that upon default, secured parties such as People's "may take possession of the collateral."  (*Id.* at 18.)  In addition, the People's security agreements provide People's with a "possessory interest" upon default, making clear that People's "may repossess/take possession of any or all of the Collateral."  (*Id.* at 19.)  Thus, People's had a "possessory interest" even if it did not actually take possession of the Cranes.  Black's Law Dictionary 1049 (5th ed. 1979) (A "possessory interest" is defined as a "right to exert control over specific land to the exclusion of others" or a "right to possess property").

### IX.   TO THE EXTENT THAT THE COURT BELIEVES THAT PEOPLE'S COMPLAINT DOES NOT SUFFICIENTLY ALLEGE ANY FACTS OR OTHER INFORMATION TO SUPPORT ANY OF ITS CLAIMS, PEOPLE'S RESPETFULLY REQUEST AN LEAVE TO AMEND <u>THE COMPLAINT TO ADDRESS THOSE CONCERNS</u>

As shown above, People's properly asserted claims against Wells Fargo, and Wells Fargo's motion to dismiss/judgment on the pleadings, should be denied.  However, to the extent that the Court believes that any of Wells Fargo's arguments have any merit, and that additional factual allegations are necessary, People's respectfully requests that the Court grant People's leave to amend the complaint to make such allegations.  As the Supreme Court held in the seminal case *Foman v. Davis*, 371 U.S. 178 (1962):

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.  See generally, 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or

> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice
> to the opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave sought should, as the rules
> require, be "freely given." Of course, the grant or denial of an
> opportunity to amend is within the discretion of the District Court,
> but outright refusal to grant the leave without any justifying reason
> appearing for the denial is not an exercise of discretion; it is merely
> abuse of that discretion and inconsistent with the spirit of the
> Federal Rules.

*Id.* at 182.

Indeed, this Court regularly has recognized that "Rule 15(a) provides that 'leave [to amend] shall be freely given when justice so requires.'" *See, e.g., Poole v. City of Plantation*, 2010 U.S. Dist. LEXIS 44119, *103 (S.D. Fla. May 5, 2010); *Steinberg v. A Analyst Ltd.*, 2009 U.S. Dist. LEXIS 23491, *38 (S.D. Fla. Mar. 25, 2009).

Here, People's has alleged (and discovery has proven) that Wells Fargo intentionally set out to steal collateral to which it knew it was not entitled, on the eve of Zeiger's bankruptcy filing, with the express knowledge that doing so would injure People's. People's must be given an opportunity to prove its claims, and if the Court deems additional facts must be alleged in order to put Wells Fargo on notice of the basis of those claims, "justice so requires" that People's be given an opportunity to do so.

## <u>CONCLUSION</u>

**WHEREFORE**, People's respectfully requests that this Court deny Wells Fargo's motion to dismiss in its entirety or, in the alternative, grant People's leave to amend its complaint.

Dated:  December 27, 2011

Respectfully Submitted,

By: */s/ Scott B. Cosgrove*
Scott B. Cosgrove
Florida Bar Number:  0161365
SCosgrove@kasowitz.com
Audrey M. Pumariega
Florida Bar Number 0085206
apumariega@kasowitz.com
James J. Stricker
New York Bar No. 2439560
        *Pro hac vice*
jstricker@kasowitz.com

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Four Seasons Tower
1441 Brickell Avenue, Suite 1420
Miami, Florida  33131
Telephone:  (305) 377-1666
Facsimile:  (305) 377-1664
*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on December 27, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that a notice of the foregoing

document is being served this day on all counsel of record identified on the attached Service List

via transmission of Notices of Electronic Filing generated by CM/ECF.

**Charles F. Ketchey, Jr., Esq.**       **Jose Carlos A. Villanueva, Esq.**
Trenam Kemker                        Paul L. Orshan, P.A.
101 E. Kennedy Boulevard          2506 Ponce de Leon Boulevard
Suite 2700                            Coral Gables, FL 33134
Tampa, FL 33602

                                      _/s/ Audrey M. Pumariega_
                                         Attorney