IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

PEOPLE'S UNITED EQUIPMENT
FINANCE CORP., a Texas corporation,
formerly known as Financial Federal
Credit Inc.,

    Plaintiff,

vs.                                        Case No. 11-80291-CIV-MARRA/JOHNSON

WELLS FARGO EQUIPMENT
FINANCE, INC., a Minnesota
Corporation; EXACT CRANE &
EQUIPMENT, LLC, an Ohio limited
liability company; and CLEVELAND
CRANE & SHOVEL SALES, INC., an
Ohio corporation,

    Defendants.
_____/

**DEFENDANT WELLS FARGO EQUIPMENT FINANCE, INC.'S, REPLY TO PLAINTIFF'S OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS COUNTS IV, V, VI, VII, X AND XI OR ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS IV, V, VI, VII, X AND XI OF PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), pursuant to 7.1(c) of the Local Rules of the U.S. District Court for the Southern District of Florida, files its reply to Plaintiff's, People's United Equipment Finance Corp. ("People's") Opposition ("Opposition") to Wells Fargo's Motion (the "Motion") [Dkt. 32, Am. Compl.].

    I.        **PRELIMINARY STATEMENT & FACTS**

Wells Fargo disputes a number of allegations in the Amended Complaint and the Opposition. Nevertheless, for purposes of the Motion, Wells Fargo relies exclusively on the allegations of the Amended Complaint, except to the extent of the Wells Fargo financing

documents attached as Exhibit 1 to the Motion and manifestly except to the extent of any legal conclusions such as allegations of theft or stealing.

In its Opposition, People's claims that Wells Fargo stole millions of dollars in collateral (the "Cranes") and proceeds from the disposition of the Cranes (the "Proceeds"). Opp. at 2, 4. In so claiming, People's ignores the undisputed fact that Wells Fargo alone provided the funding to Atlantic Leasing, Inc. and Zeiger Crane Rental, Inc. ("Atlantic/Zeiger") for the purchase of the Cranes and immediately after doing so, protected its investment by perfecting its security interest in the Cranes. Am. Compl. ¶ 14.

People's next contends that Wells Fargo changed its position and now admits it took possession and sold the Cranes. Opp. at 2-3. That is not true. Atlantic/Zeiger sold the Cranes. More importantly, for purposes of this Motion, in which Wells Fargo relies on the Amended Complaint, People's does not allege in its Amended Complaint that Wells Fargo either repossessed or sold the Cranes.

In its Opposition, People's refers to facts obtained during discovery, which is improper except to the extent that those facts are alleged in the Amended Complaint.[1] Opp. at 3, 4-5. People's tactic is unfair as the Court does not have all the facts in front of it, and misleading because People's takes the facts out of context. In any event, People's citations to facts outside the pleadings does not affect the legal analysis of Wells Fargo's Motion.

Wells Fargo has consistently stated the Cranes were equipment, not inventory, and hence Wells Fargo acquired a purchase money security interest, with superiority, under Fla. Stat. 679.324. Motion, at 3-4. However, the issue need not be addressed further herein. The Motion does not seek a determination of priorities among the parties. The point of Wells Fargo's Motion

---

[1] People's quote of the January 29, 2010 email and the 2008 memo is inappropriate. People's takes the January 29, 2010 email and the 2008 memo out of context. Since Wells Fargo has limited space in its reply, Wells Fargo will

2

is that, even if People's had a superior interest, People's cannot prevail on certain counts of its Amended Complaint because as a secured creditor, Wells Fargo had the right to take possession of the Cranes and/or a right to receive the Proceeds.

## II.     STANDARD OF REVIEW

People's suggestion that dismissal of its claims is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," misconstrues applicable law. The Supreme Court abrogated the language People's believes controls, pronouncing that the "no set of facts" standard has "earned its retirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 562–63 (2007). The Eleventh Circuit and the Southern District of Florida have recognized this. *See, e.g., Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *Jet Pay, LLC v. RJD Stores, LLC*, 2011 WL 1878581, at *1 (S.D. Fla. May 17, 2011); *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007).

People's must provide enough factual allegations "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555; *Smith v. City of Oak Hill, Florida*, 2011 WL 4597347, at *1 (M.D. Fla. Oct. 3, 2011). The amended complaint must provide sufficient facts to state a claim plausible on its face in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Watts v. Fla. Int'l University*, 495 F.3d 1289, 1295-96 (11th Cir. 2007).

In addition, The above standard is applicable to the Motion pursuant to Fed. R. Civ. P. 12(c), as outlined in authority People's cites (Opp. at p. 6), which, not surprisingly, relies on *Twombly*—not People's quotation from *Conley*—for the appropriate standard. *See Salanitro v. U.S. Office of Personnel Management, Retirement Operations Div.*, 2011 WL 2670076, at *1

---

provide its explanation of the January 29, 2010 email and 2008 memo if and when appropriate.

(M.D. Fla. July 8, 2011). Accordingly, People's attempt to ignore controlling precedent and rely on abrogated language to extract a more favorable standard should be rejected.

### III. WELLS FARGO CORRECTLY STATED ITS ARTICLE 9 RIGHTS.

First, People's argues that the Official Comment to Section 609 affords it relief because Wells Fargo refused to relinquish the collateral. Opp. at 7-8. However, People's only demand was for proceeds after disposition of the Cranes (Am. Compl. 33). People's would have had to demand possession of the Cranes prior to disposition. *See, First Nat'l Bank of Steeleville, N.A. v. Erb Equip. Co., Inc.*, 921 S.W.2d 57, 64 (Mo. App. 1996)(holding a junior creditor was not liable to a senior creditor for conversion for failing to comply with the senior creditor's demand for the proceeds from the disposition, even when the senior creditor's demand for the proceeds occurred two days before the disposition).

The second and fifth argument of People's is that Wells Fargo's entire Motion is based upon a false premise that Wells Fargo acted in good faith and without knowledge. Opp. at 5, 8, 10. Wells Fargo never made this argument in the Motion. Good faith is an affirmative defense but was not raised in support of the Motion. People's reliance on Comment 5 to 9-610 of the UCC for the proposition that Wells Fargo had to act in good faith and without knowledge to escape liability for conversion, is misleading. Opp. at 5, 8, 10. The Opposition failed to provide the entire quote from Comment 5 to 9-610 of the UCC which states that "[e]ven if a senior were to have a non-Article 9 claim to proceeds of a junior's disposition, Section 615(g) would protect a junior who acted in good faith and without knowledge that its actions violate the rights of the senior party." (emphasis added). It is clear that 9-615(g)[2] is a provision used to protect junior creditors only when a senior creditor has a valid claim against the junior creditor for proceeds. As stated in the Motion and herein, People's does not have a non-Article 9 claim; thus, Wells

4

Fargo does not need to rely on 9-615(g) of the UCC for protection. The Motion is predicated on provisions of the UCC which expressly permit a junior creditor to enforce its security interest against collateral and proceeds even when the junior creditor has knowledge of a superior security interest. Fla. Stat. 679.609; 679.615.

As a third argument, the Opposition argues Wells Fargo did not provide notice of disposition of the Cranes to People's. Opp. at 5, 9, 11. This argument is also unavailing. It presupposes Wells Fargo repossessed and sold the cranes. As noted above, and acknowledged by People's in the Amended Complaint, Wells Fargo did neither. Although Well Fargo never repossessed the Cranes, Wells Fargo is still entitled to the protections afforded by § 679.610 and § 679.615 of the Florida Statutes. *See, Hope v. Performance Auto., Inc.*, 710 So. 2d 1235 (Ala. 1998)(holding that the UCC does not require a secured creditor to take possession of collateral for a disposition under 9-504(1)[3]). Alternatively, even if Wells Fargo was required to provide People's with notice of the disposition of the Cranes, Wells Fargo is not liable for conversion. *See, Gillenwater v. Mid-Amer. Bank and Trust Co.*, 870 P.2d 700, 704-705 (App. Kan. 1994), 270 B.R. 295, 302 (D. Kan. 2001)(holding that a secured party's breach of an obligation under the UCC does not constitute conversion).

People's fourth argument is that the UCC requires sales of collateral in a commercially reasonable manner. Wells Fargo did not dispose of the Cranes. Opp. at 8-10. Moreover, People's has not asserted an action against Wells Fargo for conducting an unreasonable sale nor has People's provided case law that holds that conducting a commercially unreasonable sale is a basis for conversion. As stated in *Erb*, the purpose of conducting a commercially reasonable sale is to protect junior creditors and debtor's potential surplus from the disposition, which will be

---

[2] In Florida, 9-615(g) is codified as Florida Statute § 679.615(7).
[3] The UCC was revised in 2000. The revised UCC renumbered the pertinent Section of 9-504(1) as 9-610(a).

applied to junior creditors claims or given back to the debtor under 9-615, not to protect a "senior lienor who has no claim to the proceeds." *Erb*, 921 S.W.2d at 64. The senior creditor's protection lies in the fact that presumably the senior creditor still has a security interest in the underlying collateral that it can enforce. *Id.*

### IV.     PEOPLE'S ARGUMENTS FAIL TO ESTABLISH AN ARGUMENT FOR CONVERSION.

People's attempt to distinguish Wells Fargo's cases in support of its Motion fails. People's attempts to distinguish *Erb*, 921 S.W.2d 57 by stating in Erb that the junior creditor provided notice to the senior creditor of the impending sale of the collateral. Opp. at 11. This argument is severally misleading because the *Erb* opinion has no discussion or even mention of whether notice was given by the junior creditor to the senior creditor. *See generally, Id.* The simple fact is *Erb* stands for the proposition that under the UCC a junior secured creditor is entitled to take possession of collateral, dispose of collateral and retain the proceeds from the disposition even when a senior creditor demands that the junior creditor pay the proceeds from the disposition. *Id.*

People's attempt to distinguish *City Bank v. Compass Bank*, 717 F. Supp. 2d 599 (W.D. Tex. 2010) also fails. People's claims *City Bank* holds junior creditors must have the senior creditor's consent to retain proceeds from a disposition. Opp. at 12. That argument is meritless. The consent in *City Bank* was implied by the senior creditor's course of conduct because the senior creditor did not request that the collateral proceeds be collected in a lockbox. *City Bank*, 717 F. Supp. 2d at 612. Instead, the senior creditor allowed the debtor to retain the proceeds. *Id.* Likewise, People's consented to Atlantic/Zeiger's continued possession of the Cranes by not acting under its security agreements or under Article 9 of the UCC. As stated above, the UCC entitles junior creditors to repossess and dispose of collateral and retain the proceeds. According

6

to the Amended Complaint, it is undisputed that it was not until after Wells Fargo obtained the Proceeds, that People's demanded return of the Cranes and the Proceeds. Am. Compl. ¶ 33. Additionally, the fact the proceeds in *City Bank* were remitted back to the debtor is of no consequence, as People's contends. Opp. at 12; *See, supra* 8-9 (discussing that under the UCC a junior creditor is entitled to retain proceeds from a disposition free of any senior security interest).

People's attempts to manipulate and enlarge the holdings of the cases cited in the Motion where a junior creditor was held liable for conversion. Opp. at 12-13. The Opposition points out that *In re Machinery* cites to official comment 5 of 9-609 of the UCC, which states "a junior creditor who refuses to surrender possession of collateral to a senior creditor upon the senior's demand is liable in conversion to the senior." *Id.* at 12. However, the facts before the *In re Machinery* court pertained to whether a junior was liable for conversion for trespassing onto a senior creditor's property and taking possession of collateral that the senior creditor had already repossessed and then subsequently disposing of the collateral after the senior demanded that the junior return it. *Id.* at 371. Clearly those facts do not apply here. Furthermore, the *In re Machinery* court specifically discusses the *Erb* opinion and did not dispute *Erb's* holding or reasoning. *Id.* at 375.

As addressed above, People's does not allege that it repossessed or demanded Wells Fargo return the Cranes prior to the disposition thereof. People's demanded Wells Fargo return the Proceeds but only after sale of the Cranes and receipt by Wells Fargo of proceeds. [Am. Compl. ¶ 33 and ¶ 64]. Wells Fargo was entitled to retain the Proceeds free of any senior security interest. Fla. Stat. 679.615(1); *Erb*, 921 S.W.2d at 64; *Continental Bank of Buffalo Grove, N.A. v. Krebs*, 540 N.E.2d 1023, 1026 (Ap. Ill. 1989); *Chadron Energy Corp. v. First*

*National Bank of Omaha*, 459 N.W.2d 718, 732-33 (Neb. 1990). If People's did have a senior security interest in the Cranes as they allege, any claim by People's to a security interest in the Proceeds would be inconsistent with the distribution scheme in Florida Statute 679.615(1). *See*, *Chadron*, 459 N.W.2d at 733. The distribution scheme is not unjust because the senior secured party presumably still has a security interest in the collateral that it can enforce. *Erb*, 921 S.W.2d at 64.

Wells Fargo disputes People's assertion that the facts of *In re Halmar*, 968 F.2d 121 (1st Cir. 1992) are similar to the instant case. Opp. at 13. In *Halmar*, a senior creditor demanded a junior creditor cease collecting proceeds in a lockbox, but the junior creditor continued. The junior creditor was held liable for conversion for the period after the senior creditor demanded the junior creditor cease lockbox collection. *Id.* at 129-30. The junior creditor had no liability for collection of proceeds prior to the demand, as the senior secured creditor acquiesced and took no action to collect its collateral before demand.

### V. PEOPLE'S ARGUMENTS FAIL TO ESTABLISH AN ARGUMENT FOR TORTIOUS INTERFERENCE.

People's asserts that, if Wells Fargo had a senior security interest in the Cranes, then that superior security interest would interfere with People's "earlier" superior rights in the assets of Zeiger. Opp. 14. This argument is flawed because under allegations of the Amended Complaint, People's never had a prior, superior right in the Cranes. Wells Fargo's and People's interest in the Cranes arose at the same time, when Atlantic/Zeiger obtained the Cranes paid for by Wells Fargo.

The second argument of People's is that the mere fact that Zeiger acquired the Cranes and People's alleges damages, entitles it to proceed with its claim. However, facts of the Amended Complaint show that it is not plausible People's was damaged by the disposition of the

Cranes with the Proceeds going to Wells Fargo because without Wells Fargo's financing the Cranes would not have been purchased. Moreover, People's would not be damaged by Wells Fargo because People's presumably still has a security interest in the Cranes in the hands of the purchasers. Thus, People's is either in the same position as it would have been without Wells Fargo providing the financing for the Cranes or in a better position by virtue of its continued security interest in the Cranes. Furthermore, as to People's third and fourth arguments, Wells Fargo acted within its rights under the UCC.

### VI. PEOPLE'S ARGUMENT FAILS TO ESTABLISH AN ARGUMENT FOR CONSPIRACY TO VIOLATE SECTION 818.01, FLA. STAT.

People's argues that Wells Fargo was not entitled to possession of the Cranes or entitled to dispose of the Cranes without providing notice to People's. Opp. at 15-16. People's fails to account for the fact that Florida Statute § 818.01 requires "intent to defeat, hinder or delay enforcement of such lien." As asserted in the Motion and above, Wells Fargo acted within its rights under the UCC.

### VII. PEOPLE'S ARGUMENTS FAIL TO ESTABLISH AN ARGUMENT FOR FRAUDULENT TRANSFER.

People's first posits that it has standing to assert a fraudulent transfer action because if it prevails, "the money would not be returned to the bankruptcy estate for the benefit of all the general creditors." Opp. at 16. For support, People's cites a non-binding district court case from Texas. *Id.* Wells Fargo's Motion cites to case law from the Southern District of Florida that holds that a creditor lacks standing to assert a fraudulent transfer action after the debtor files bankruptcy because fraudulent conveyance actions are property of the estate that can only be asserted by the trustee of the bankruptcy or the debtor-in-possession.

### VIII. PEOPLE'S ARGUMENT FAILS TO ESTABLISH AN ARGUMENT FOR CONSPIRACY TO COMMIT CONVERSION.

People's asserts that it has shown that it has properly asserted a claim for conversion, and thus conspiracy to commit conversion must also stand. The converse is true, based on the arguments asserted in Wells Fargo's Motion and as clarified above.

### IX. PEOPLE'S ARGUMENTS FAIL TO ESTABLISH AN ARGUMENT FOR CIVIL THEFT.

People's first argument is that Wells Fargo needed consent to possess and dispose of collateral. First, as stated above, Wells Fargo never possessed or disposed of the Cranes. Second, the only substantive difference between conversion and civil theft is civil theft requires a criminal intent to steal. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008). Thus, Wells Fargo reasserts it arguments as stated in sections III and IV above. *Infra* at 4-10.

Lastly, irrespective of the above, under the laws of Florida there is no claim of conversion by a lienholder without prior demand and there is no claim for civil theft where a defendant was rightfully in possession, as was Wells Fargo under the UCC, or where a lienholder did not first enforce its right to possession. *Ginsberg and MLG Properties, Inc. v. Lennar Holdings, Inc.*, 645 So. 2d 490 (Fla. 3d DCA 1994).

People's second argument is that, Wells Fargo had a possessory interest in the Cranes, then People's had a possessory interest in the Cranes as well. However, Wells Fargo never asserted that it had a possessory interest in the Cranes. Wells Fargo asserted that it was privileged to take possession of the Cranes, but it did not do so. Instead, Wells Fargo was entitled under the UCC to receive possession of the proceeds, and it did do so.

Respectfully Submitted,

/s/ Charles F. Ketchey, Jr.
CHARLES F. KETCHEY, JR     FBN 0181735
cketchey@trenam.com
STEPHANIE CRANE LIEB     FBN 0031806
slieb@trenam.com
JUSTIN J. HORAN     FBN 0060871
jhoran@trenam.com
TRENAM KEMKER
Bank of America Plaza, Suite 2700
101 E. Kennedy Boulevard
Tampa, FL 33602-5150
Ph: (813) 223-7474 | Fax: (813) 229-6553
Attorneys for Defendant, Wells Fargo Equipment Finance, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing WELLS FARGO EQUIPMENT FINANCE, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO WELLS FARGO'S MOTION TO DISMISS COUNTS IV, V, VI, VII, X AND XI OR ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS IV, V, VI, VII, X AND XI OF PEOPLE'S UNITED EQUIPMENT FINANCE CORP.'S AMENDED COMPLAINT was served by the Court's CM/ECF Noticing System on January 6th, 2012 on all counsel or parties of record on the Service List Below.

/s/ Charles F. Ketchey, Jr.

## SERVICE LIST

**Scott B. Cosgrove, Esquire**
scosgrove@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
The Four Seasons Tower, Suite 1420
1441 Brickell Avenue
Miami, Florida 33131

**James J. Stricker, Esquire**
jstricker@kasowitz.com
Kasowitz, Benson, Torres
& Friedman LLP
1633 Broadway, 21st Floor
New York, NY 10019

**Paul L. Orshan, Esquire**
paul@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134

**Jose-Carlos A. Villanueva, Esquire**
jcv@orshanpa.com
Paul L. Orshan, P.A.
2506 Ponce de Leon Boulevard
Coral Gables, Florida 33134